**In re Dennis John EASTER and Catherine Easter, Debtors.**

**In re Gary S. KRAMER and Myra J. Kramer, Debtors.**

**Bankruptcy Nos. 89–32855–BKC–TCB, 89–32856–BKC–TCB.**

United States Bankruptcy Court, S.D. Florida.

Aug. 17, 1989.

Schantz, Schatzman & Aaronson P.A., Shelly Berkowitz for Lawrence M. Schantz, Miami, Fla., for debtors.

Irving E. Gennet, trustee.

Robert C. Furr, Boca Raton, Fla., for trustee.

## ORDER ON REVIEW OF FEES FOR DEBTORS' ATTORNEY

THOMAS C. BRITTON, Chief Judge.

These two chapter 7 cases were filed the same day by the same law firm.

The cases involve two men engaged in business together as stock brokers and their respective wives. The law firm was paid $6,500 as a fee for each case. The trustee has alleged that the fee was excessive in each case and has requested review by this court under 11 U.S.C. § 329(b) and Bankr. Rule 2017(a). The hearing for both cases was held August 8, at which time a partner of the law firm offered an oral justification for the amount of the two fees.

I now find and conclude that each fee was excessive; that a reasonable charge, including a deposit for the $90 filing fee, is $2,500; and, therefore, that as is directed by § 329(b)(1)(B), with respect to the law firm, Schantz, Schatzman & Aaronson, the fee agreement is cancelled and the law firm is ordered to return in each case, the difference ($4,000) forthwith to the trustee.

In this instance, neither the papers filed by the debtors nor those filed by the law firm claimed or disclosed that the payment came from a source other than the debtors. During the firm's oral presentation, it was stated that the two fees were paid by the Kramer Agency, a third party entity of which these two men are the principals. In view of these circumstances, I find that the money was paid from assets in which the two men had an equal interest and which they jointly controlled. Under those circumstances, those assets, subject only to the liabilities of that entity, if any, which are paramount to the claims of the two principals would have been "property of the estate". The trustee must be prepared to respond to claims against the Kramer Agency to the extent of the excessive fees that are refunded, in the event that there are any such claims and in the event that any such claims are asserted before these two cases are closed.

These two cases are very similar. The liabilities of the Easters exceed $4.5 million. Their disclosed assets on the date the petition was filed, after deducting the value of their $250,000 homes which is exempt from the claims of creditors, total only $41,000. They had but $60 cash.

The liabilities of the Kramers exceeded $5.1 million. Their assets, after deducting the value of their $450,000 exempt homestead, were valued by them at $13,000. They had $120 in cash when they filed for bankruptcy.

The incomes of these two couples in 1987 approximated $100,000 each. The income of the Easters in 1988 was $81,000. The Kramers do not know what their income in 1988 was. The debts of all four debtors go back several years.

Although it is true that each of these bankruptcies involves a longer list of debts and creditors than is typical of what might be described as the average chapter 7 petition filed on behalf of a husband and wife in this District, the differences in these cases from the average husband and wife bankruptcy would merely require the debtors to furnish more information to their attorneys and would require more clerical effort in completing the required schedules.

I see nothing in either case, nor has anything in either case been asserted by the law firm that would make these cases unique bankruptcies which would require unusual skill or effort on the part of the attorneys to advise the debtors that they are indeed bankrupt, to prepare and file the required petitions and schedules and to attend the statutory creditors' meeting with each couple.

In this District, a fee of $500 to $600 is generally charged for the typical husband and wife chapter 7 bankruptcy petition. A fee five times that amount should be ample to cover the labor involved in representing these two couples.

The oral justification offered included the submission of computer printouts reflecting time charges made by the lawyers in the firm to each case up to the date of the hearing. These time charges show that in each instance a senior partner, who values his time at $250 an hour counseled briefly with the respective debtors and that the matter was then, quite appropriately, turned over to an associate who billed $125 an hour, who signed the petitions and is fully qualified to perform all of the legal services to date in these cases.

The time of the two senior partners may well be worth the value they have placed upon it where the special knowledge and experience each has accumulated is required and is utilized. However, the services offered in this instance in each case neither required nor utilized those special demanding skills and, therefore, the time of the senior partners spent in these two cases did not become more valuable merely because that time was spent by these individuals, rather than by the qualified associate.

The oral justification for these extraordinary fees made the point that the creditors' meeting was rescheduled and therefore had to be attended twice. This fact does not, in my opinion, justify any increase of fee because it is quite apparent that the only reason that creditors' meeting was rescheduled is that the law firm delayed the filing of the debtors' schedules (with this court's ex parte permission) until after the originally scheduled creditors' meeting. Because the schedules were not available, the trustee could not proceed on the date originally scheduled. Had this busy law firm been more diligent in preparing and filing the schedules, there would have been no need to reschedule the creditors meeting.

A second justification offered for these two substantial fees is that challenges to the debtors' discharges are anticipated and the fee was fixed to include that anticipated expense.

The justification for the statutory scheme which permits attorneys to collect fees from debtors on the eve of bankruptcy for representation in bankruptcy and which permits attorneys to claim from bankrupt estates reasonable compensation for certain services in bankruptcy, is that such representation is an essential part of the administration of the bankruptcy case, and,

therefore, the attorneys' compensation should be given primacy over the claims of all creditors. The preferential treatment given to compensation of bankruptcy counsel, however, is limited to those services essential to the bankruptcy administration of the case. It does not include services designed to benefit the bankrupt personally. As the Fifth Circuit held in *In re Jones,* 665 F.2d 60 (5th Cir.1982):

"This appeal presents the question whether an attorney for the bankrupt is entitled to compensation out of the bankrupt estate for services rendered to the bankrupt in defeating the oppositions to discharge filed by several creditors. The trial court held that attorneys' fees for such services are no payable out of the estate. We agree ...

"The granting or denial of a discharge is personal to the bankrupt and has nothing to do with the preservation of the estate. This court has stated that 'legal services designed to benefit the bankrupt personally may not be compensable out of the estate.'"

DONE and ORDERED.