**In re William Ernie MELLARD et ux., Debtors.**

**Bankruptcy No. 90–001860–BKC–6C3.**

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

Aug. 3, 1990.

Andrew Baron, Orlando, Fla., for debtor.

Neil J. Buchalter, Titusville, Fla., pro se.

Richard Palmer, Winter Park, Fla., Trustee.

## MEMORANDUM OPINION

C. TIMOTHY CORCORAN, III,
Bankruptcy Judge.

THIS CASE came on for hearing on June 26, 1990, pursuant to an order to show cause directed to Neil J. Buchalter, Esquire, and Andrew Baron, Esquire (Document No. 10).

Each lawyer has received an excessive amount as an attorneys fee for representing "repeat" or "serial" filing Chapter 13 debtors. To remedy the abuse of the bankruptcy system and the prejudice to creditors that results from the payment of the excessive fees, the court will order the disgorgement of the excessive amounts and the payment of them to the Chapter 13 Standing Trustee for use in paying creditors under the plan.

### The Problem

The issues presented here present an unusual twist on a substantial problem that the court faces on a weekly basis in the administration of the Chapter 13 docket. The fundamental problem is that of the "repeat" or "serial" Chapter 13 filer and the resulting abuse of the bankruptcy system. Under this all too common pattern, a debtor urges confirmation of a plan when the facts unfortunately reveal that the debtor has no realistic prospect of successfully completing the payments under the plan. Either before or after confirmation, the debtor fails to make the required plan payments, the case is dismissed, and the debtor then refiles one or more additional times before the debtor finally accepts reality and abandons the effort.

The evil perpetrated by this pattern of euphoria and failure, of course, is that creditors are not paid and are prevented by the automatic stay from pursuing the collection of their just due. Mortgage creditors have frequently been put off for two years or more, with no payments at all, by a debtor's skillful use of an abusive pattern of filings, dismissals for non-payment, and refilings. This evil can be particularly abusive when mortgage creditors are involved who hold mortgages on properties that the debtor rents to tenants. Thus, the debtor's pattern of abuse not only illegitimately delays creditors when there is no realistic possibility of successfully completing the plan, but it also allows the debtor to profit by the collection of rent while preventing the mortgagee from collecting the mortgage.

In some cases fitting within this pattern, the debtor may intentionally invoke the bankruptcy process to benefit from the automatic stay with no intention whatsoever of meeting his obligations or completing a plan. In most cases, however, the debtor probably has no abusive intent. Instead, the debtor verily intends to complete a plan, but the facts are all against him. In other words, the debtor grasps at straws in an effort to save his home or automobile. If the debtor's financial circumstances permit him to complete a Chapter 13 plan, the purposes of this chapter of the Bankruptcy Code are well met; if they do not, the debtor's invocation of this chapter results in abuse in fact despite the debtor's lack of an objective intent to cause that abuse.

The challenge presented to the court in these circumstances is to determine at an early point before any abuse occurs which cases are real and which are illusory. This is a most difficult task. Expecting clairvoyance on the part of the court, the Bankruptcy Code gives little guidance. It tells the court that a Chapter 13 plan must be proposed in "good faith." 11 U.S.C. § 1325(a)(3). It requires the court to find that "the debtor will be able to make all payments under the plan and to comply with the plan." 11 U.S.C. § 1325(a)(6). It tells the court to dismiss a case when there is an "unreasonable delay by the debtor that is prejudicial to creditors," when the case cannot be confirmed, and when payments that are due are not made. 11 U.S.C. § 1307(c)(1), (4), (5), and (6).

In applying these criteria, the court has little with which to work other than desperate debtors promising to do whatever is required and begging for another chance. Neither the debtors' situations, nor the sympathy they invoke, nor the Bankruptcy Code provides much aid to the court in

finding the narrow line between fairness to the debtor in giving him a chance to make a plan work and fairness to creditors in denying a chance to those who have no prospects of success.

### The Complication

The problems presented by the "repeat" or "serial" filer are further complicated by the manner in which attorneys charge fees. It is the practice of the bar to charge a flat fee for representing a debtor in a Chapter 13 case. Some lawyers charge this flat fee and require payment in full before filing. Other lawyers require that a substantial portion of the fee be paid before filing, with the remainder then paid through the plan itself.

In the former case, the lawyer receives the full fee "up front" whether the case is confirmed or not. If the case is dismissed before confirmation, the money has already been paid to the lawyer, and no refund is made of any unearned portion. In those circumstances, it has been the practice of the bar in this division to treat the filing of the second case as an entirely new matter and to charge a new, full fee for representing the debtor in the second case. If the second case is ultimately confirmed, the debtor has paid his lawyer twice the fee that would have been paid had the first case been completed. If the second case is dismissed before confirmation and a third case filed, the debtor will have paid three times the fee, and so on.

In those cases where intervening events make the factual situation different in the second case from that existing in the first case, it may be entirely appropriate for the attorney to treat the second case as a "new" case and to charge a full, second fee. In those cases in which there is nothing or little different in the second case from that existing in the first case, however, the "case" is the same, and the dismissal and refiling represent nothing but an opportunity for the lawyer to charge twice.

The debtor's payment to his lawyer of an aggregate fee that is excessive is of critical importance to the court. This stems, of course, from the fact that the excessive amount paid to the attorney would have been paid to creditors but for the payment to the attorney. Thus, not only does the "repeat" or "serial" filer delay his creditors by the pattern of dismissal and refiling, but he also reduces the amount available to pay creditors by the excessive amount he pays to his lawyer for the privilege of playing the dismissal and refile game.

■■ To control—if not remedy—the additional dimension of abuse that results from the excessive attorneys fee payment, the court has established a practice of carefully scrutinizing the attorneys fee paid by the debtor in repeat filing situations. When the court finds the factual circumstances present in the second case to be different from those present in the first, the court has no difficulty in permitting the payment of a second, full fee. In those circumstances in which the second filing is a mere continuation of the identical case initially filed with the first petition, however, the court has determined the excessive amount paid and ordered a disgorgement of that excessive amount. This practice is well known to the Chapter 13 bar in this division.

### The Twist

The stage is now set for the issue facing the court in this case. Here, a new, second lawyer filed the second case, charging a second, full fee. The lawyer who filed the first case did not file the second. Does or should this twist make a difference?

When this situation surfaced, the court entered an order to show cause directed to both the first and the second lawyers and conducted a hearing on the matter. On the basis of the foregoing and the facts established at that hearing, the court makes the following

### Findings of Fact:

1. Neil J. Buchalter is a practicing attorney with offices in Titusville, Florida, who represents a large number of Chapter 13 debtors in their cases pending in this

division. Andrew Baron is a practicing lawyer with offices in Orlando who likewise represents a large number of Chapter 13 debtors in their cases pending in this division. Both lawyers are regularly before the court every week representing their clients in Chapter 13 cases.

2. On December 20, 1989, the husband/debtor here filed a petition for relief under Chapter 13 of the Bankruptcy Code, Case No. 89–04533–BKC–6C3. The husband/debtor was represented in that case by Mr. Buchalter. Prior to the filing of that case, Mr. Buchalter was paid a fee of $2,000. The fee paid was a flat fee to cover all services through the confirmation of a plan in that case. This is Mr. Buchalter's standard fee charged debtors in Chapter 13 cases.

3. At the time of the filing of that case, the debtor had substantial difficulties with the Internal Revenue Service. The principal purpose in filing the husband/debtor's petition was to invoke the automatic stay and save the home of both debtors. In addition to preparing and filing the petition and the necessary schedules, Mr. Buchalter also devoted time in dealing with the representatives of the Internal Revenue Service.

4. Despite the existence of the problems with the Internal Revenue Service, the husband/debtor's first case was a routine Chapter 13 case presenting no problems of unique or out-of-the-ordinary complexity.

5. On April 10, 1990, the court dismissed the first case because the husband/debtor failed to make the required monthly payments to the Chapter 13 Standing Trustee under the proposed plan.

6. At the time the first case was dismissed, the husband/debtor received a refund from the Chapter 13 Standing Trustee of $1,249.04. Upon dismissal short of confirmation, of course, the trustee refunds plan payments to the debtors. 11 U.S.C. § 1326(a)(2). Had the first case not been dismissed, those funds would have gone to creditors under the plan.

7. On May 16, 1990, a little over a month after the dismissal of the husband/debtor's first case, the husband/debtor and the wife/debtor together filed in this case a joint petition for relief under Chapter 13 of the Bankruptcy Code. In the filing of this petition, the debtors were represented by Mr. Baron. Prior to the filing, the debtors paid Mr. Baron a fee of $1,500, plus an additional $180 for the clerk's filing fee and Mr. Baron's costs. The fee paid was a flat fee to cover all services through the confirmation of a plan in this case. This is Mr. Baron's standard fee charged debtors in Chapter 13 cases.

8. At the time of the filing of this second case, the problems faced by the debtors were the same as faced by them at the time of the filing of the first case by the husband/debtor alone. The purpose of filing this second case was the same as the purpose in filing the first case. The proposed plan filed in the first case is substantially identical to the proposed plan filed in the second case. In fact, the second case is nothing but a continuation of the first case. It was only filed as a new case because the first case was dismissed for the husband/debtor's failure to make the plan payments.

9. This second case is a routine Chapter 13 case presenting no problems of unique or out-of-the-ordinary complexity.

10. Substantially less attorney time and effort were required to prepare and file the petition and schedules in the second case because counsel merely had to retype the information from the papers in the first case, making minor updates required by the passage of five months time.

11. The only reason that a new lawyer, Mr. Baron, filed the second case rather than the original lawyer, Mr. Buchalter, was the knowledge on the part of both Mr. Buchalter and Mr. Baron that the court would not allow the first attorney to receive a full fee for filing the second case in these circumstances after that lawyer had already received a full fee for filing the first case. Accordingly, Mr. Buchalter sent the debtors to Mr. Baron for the second case.

12. Despite the fact that Mr. Buchalter never earned a full fee, he did not refund any portion of the $2,000 paid by the hus-

band/debtor. Despite the fact that the work required of Mr. Baron in the second case is substantially less than it would be for a new case, Mr. Baron charged the debtors a full fee for the second case.

13. The debtors ultimately paid Mr. Baron his fee and costs in the second case from the $1,249.04 received as a refund from the Chapter 13 Standing Trustee upon the dismissal of the first case, plus an additional $430.96 of the debtors' funds. All of these funds would have been available to pay creditors under the plan but for the dismissal of the first case, the failure of Mr. Buchalter to refund the unearned portion of the fee in the first case, and the charge by Mr. Baron of a full fee to file the second case.

14. In determining the reasonableness of the fees charged by Mr. Buchalter and Mr. Baron in these circumstances, the court has carefully considered each of the factors described in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974), and as amplified in *Matter of First Colonial Corp. of America,* 544 F.2d 1291 (5th Cir.1977). The court has also applied its experience in dealing with literally hundreds of Chapter 13 cases in the last year. The time and labor involved here is rather minimal. Both Mr. Baron and Mr. Buchalter have systems involved where paralegal personnel do substantially all of the work required. Both Mr. Baron and Mr. Buchalter routinely meet clients in court when confirmation hearings are scheduled, not having seen them at all since the initial interview or the Section 341 meeting of creditors. There are no novel or difficult questions involved in these cases (actually the same case). The skill involved to perform the legal services properly is not great. Acceptance of employment in these cases does not preclude other employment on the part of the attorney. The amounts charged by these lawyers to complete a case is on the high side of that customarily charged in this community for services of this sort. The fees charged involve a fixed or flat fee. No limitations were imposed by the client or other circumstances. No extraordinary results have been obtained or are involved. The deci-

sion here is consistent with the experience, reputation, and ability of the two attorneys involved. There is no undesirability factor applicable to this case. The professional relationship between client and lawyer in this case is limited, involving generally this case only. Finally, the amounts approved here are completely consistent with other awards and fees paid in similar cases in this division.

■ 15. The fee paid to Mr. Buchalter for his services in the first case was excessive. Mr. Buchalter agreed to represent the debtors through confirmation for a fixed fee of $2,000. Although a fee of $2,000 for an Orlando lawyer to complete a routine Chapter 13 case verges on excessiveness, the court is not prepared to find that it is excessive when charged by a lawyer in Titusville. Obviously, a lawyer in Brevard County can be expected to charge somewhat more than a lawyer in Orlando because of the travel time involved in coming to court. Nevertheless, the $2,000 fee charged here in the first case became excessive when the case was aborted well before confirmation, the lawyer therefore never earned the full fee, and no refund of the unearned portion was made. The court finds that, for the services actually rendered to the husband/debtor in the first case, a fee of no more than $1,500 is reasonable.

■ 16. With regard to Mr. Baron, the court also finds that his fee is excessive. Although the court is not prepared to find that a $1,500 fee charged by an Orlando attorney for a routine Chapter 13 is excessive, it is clearly on the high side of reasonableness in light of all the factors delineated above. That fee is plainly excessive, however, when it is charged for handling a second case that is merely a continuation of a prior case, as was done here. The court finds that a fee of $1,000 is the maximum amount that constitutes a reasonable fee for the services rendered and to be rendered in this case by Mr. Baron—assuming the second case is confirmed.

17. The use of Mr. Baron to file the second case was an artifice to avoid the

court's well-known practice of not permitting a full fee to a lawyer who files a second case on behalf of a debtor who aborted his first case in circumstances such as those present here. The use of a new lawyer to file the second case presents the identical harm to creditors that occurs when a first lawyer charges a full fee to handle the second case. The full fee paid to the second lawyer is no less excessive because it is paid to a second lawyer rather than to the first.

18. The excessive amounts paid to Mr. Buchalter and to Mr. Baron, $500 to each, for a total of $1,000, would have been property of the estate and were to be paid by or on behalf of the debtors under a plan had the excessive amounts not been paid to these lawyers.

19. Unless the court orders the disgorgement of the excessive amount paid to each, these lawyers would be the beneficiaries of the debtors' action that has directly prejudiced creditors. In other words, the debtors' action has taken these dollars directly out of the pockets of creditors and put them into the pockets of the lawyers. Unless the court reverses that result, lawyers generally would have every incentive to encourage—whether consciously or subconsciously—debtors to join the pattern of "repeat" or "serial" filers to maximize their own fees to the prejudice of creditors.

20. In making the findings above, the court has focused on a reasonable fee for the services rendered to the debtors *by each lawyer.* The court has not focused on a reasonable fee for the services rendered in the "extended" case had those services been rendered *by a single lawyer.* In doing so, the court recognizes that the total amount approved as a reasonable fee for both lawyers is greater than would be reasonable had the services been performed by one lawyer. There is some duplication of effort when two lawyers are involved, one after another, as was the case here. That duplication makes the total fee higher. The debtors paid a total attorneys fee of $3,500 to their two attorneys for their services in this case and the husband/debt-

or's first case. A total fee in that amount is grossly excessive and unreasonable. After the attorneys refund $500 each pursuant to this court's order, the debtors will have paid a total attorneys fee of $2,500 for representation in this court. That fee itself is grossly excessive and unreasonable for the services rendered had the services been rendered by a single lawyer.

21. A reasonable fee for the services of a competent attorney in this simple Chapter 13 case would be no more than a maximum of $1,500 to $2,000, depending upon the location of the debtor, the identity of the lawyer, and the location of that lawyer's office. As a result of the debtors' dismissal and refiling, and despite the court's order of disgorgement, the debtors have therefore squandered $500 to $1,000 that otherwise would have been available to pay creditors.

22. Were the court to order a further disgorgement by Mr. Buchalter and Mr. Baron of this additional amount that the debtors have squandered, the court would make creditors whole, but the court would also do an injustice to Mr. Buchalter and to Mr. Baron. Mr. Buchalter in fact earned a fee of $1,500. It was not on his account that the first case was dismissed. Mr. Baron will have in fact earned a fee of $1,000 when the second case is confirmed. It is not his fault that the husband/debtor had filed a prior case. Despite the fact that Mr. Buchalter and Mr. Baron orchestrated the use of the second lawyer to attempt to avoid the court's practice of scrutinizing the attorneys fee paid for the second filing, the court would nevertheless not be justified in ordering a further disgorgement.

Based upon these findings of fact, the court make the following

*Conclusions of Law:*

23. This court has jurisdiction of the parties, including Mr. Buchalter and Mr. Baron, and the subject matter pursuant to the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.,* 28 U.S.C. § 1334, 28 U.S.C. § 157(a), and the standing order of reference en-

tered by the district court. This is a core proceeding within the meaning of 28 U.S.C. § 157(b).

24. Pursuant to the authority of Section 329(b)(1)(A) and (B) of the Bankruptcy Code and Bankruptcy Rule 2017(a) and (b), the court has the authority to order a disgorgement of the excessive amounts paid. Pursuant to Bankruptcy Rule 9021, the court will enter a separate order directing Mr. Baron and Mr. Buchalter to disgorge and pay over to the Chapter 13 Standing Trustee the amount of $500 each, no later than 30 days from the date hereof, as an additional amount to be distributed to creditors under the plan.

DONE and ORDERED.