**In re Gary J. PATRONEK, Debtor.**

**Bankruptcy No. 89–13375S.**

United States Bankruptcy Court, E.D. Pennsylvania.

Dec. 10, 1990.

Jack K. Miller, Miller & Miller, Philadelphia, Pa., for debtor.

James J. O'Connell, Philadelphia, Pa., Asst. U.S. Trustee.

Edward Sparkman, Philadelphia, Pa., Standing Chapter 13 Trustee.

OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

The law firm of MILLER and MILLER, counsel for the Debtor in this Chapter 13 bankruptcy case ("Counsel"), asks that we reconsider our Order of October 9, 1990, allowing it $1,200 of $2,000 sought as counsel fees for representation of the Debtor. Because we find that our award was already at the high end of the market rate for representation of a debtor in a Chapter 13 case and that the instant case presented no unusual or time-consuming issues, the motion for reconsideration will be denied.

The instant bankruptcy case was filed on September 14, 1989. After one continuance, the Debtor's Plan of Reorganization was confirmed on August 28, 1990. The only aspect of the case worthy of note was the Debtor's listing of a relatively large complement of unsecured debts, totalling $84,189. Of these debts, over $59,000 involved student loans amassed by the Debtor in preparing for a career as a veterinarian.[1] Consequently, one of the student-loan creditors, the University of Pennsylvania ("Penn"), filed an Objection to confirmation and another such lender, the Pennsylvania Higher Education Assistant Agency ("PHEAA"), proceeded to take an examination of the Debtor pursuant to Bankruptcy Rule 2004 (a "R2004 Exam"). However, after the R2004 Exam, both Penn and PHEAA were apparently satisfied with the Debtor's Plan, which contemplated remittance of $600 monthly to the Trustee for 60 months, because neither appeared to oppose its confirmation. An order was therefore entered confirming the Plan without a hearing.

On September 6, 1990, counsel filed an Application requesting compensation of $2,000, $600 of which had already been paid and $1,400 of which was to be paid through the plan. On October 3, 1990, Counsel certified that no objections had been filed thereto, and requested that we award it the entire fee requested.

The "Itemized Statement" accompanying the Application was in fact a recitation of tasks in the process of representing a typical debtor in a Chapter 13 case, which is identical with that filed by Counsel with nearly every one of its fee Applications. No dates or times spent on any of the "services" performed were recited. Therefore, although a lower fee might have been justified on the basis of the Application, we respected the assessment of the case by Counsel as one in which the upper range of the market rate for handling Chapter 13 cases was warranted, and we awarded Counsel $1,200.

On October 19, 1990, Counsel filed and served the instant motion upon only the Chapter 13 Trustee and the United States Trustee.[2]

---

1. Due to an amendment to 11 U.S.C. § 1328(a) of the Code, Pub.L. No. 101–508 (1990), student loans will be dischargeable in Chapter 13 cases filed after November 5, 1990, only to the same extent as in Chapter 7 cases, under 11 U.S.C. § 523(a)(8). This legislation effectively overrules our holding in *In re Gathright,* 67 B.R. 384, 391 (Bankr.E.D.Pa.1986), *appeal dismissed,* 71 B.R. 343 (E.D.Pa.1987), which permitted student loans to be discharged in Chapter 13 cases. In light of this development, we anticipate revising the objective but rather strict rule for discharge of debts under § 523(a)(8) enunciated in *In re Bryant,* 72 B.R. 913, 914–19 (Bankr.E.D.Pa. 1987). The rule developed in *Bryant* was heavily influenced by our *Gathright* holding that allowed debtors to discharge student loans by invoking Chapter 13. *See In re Dinh,* 90 B.R. 743, 747 (Bankr.E.D.Pa.1988).

2. We question whether Counsel's prosecution of the instant motion satisfied the strictures of Bankruptcy Rule ("B.Rule") 9023 and Federal Rule of Civil Procedure ("F.R.Civ.P.") 59(e). Motions for reconsideration must be *served,* presumably on *all interested parties,* within 10 days after the order of which reconsideration is sought was entered. *See, e.g., Smith v. Evans,* 853 F.2d 155, 157–62 (3d Cir.1988); and *In re Campfire Shop, Inc.,* 71 B.R. 521, 523–24 (Bankr.E.D.Pa.1987). Service on all of the Debtor's creditors within the 10–day period would appear to have been required to meet the mandate of these Rules. The failure to satisfy the requirement of B.Rule 9023 and F.R.Civ.P. 59(e) is jurisdictional. However, we will assume *arguendo* that we have jurisdiction and will proceed to decide this matter on its merits, since we did not raise the issue at the hearing, and we are not certain that Counsel did not serve all creditors in timely fashion.

The instant motion is based upon two grounds: (1) The Debtor is paying $36,000 into the plan, entitling the Chapter 13 Trustee to a commission of $3,600. Counsel therefore reasons that "[i]t would be anomalous if the Chapter 13 trustee were to receive three times the amount paid to counsel for the debtor when counsel for the debtor formulated the plan;" and (2) Counsel has now submitted a "real" "Itemization of Services," documenting 14.9 hours expended on this case and 5.1 hours more which are anticipated to be expended. Given the time recited, our Order of October 9, 1990, would allegedly result in compensation of Counsel at a rate of $60 per hour, rather than the $100 per hour Counsel apparently deems minimally acceptable.

A hearing was scheduled on the motion on November 21, 1990, and postponed at Counsel's request until November 22, 1990. On the latter date, Counsel appeared, by its senior member, and advised that it had no testimony or argument to present and would abide by the court's ruling on the motion. We have no reason to doubt Counsel's representation that he would not pursue this matter with an appeal beyond this court. However, once bitten, twice shy. *See In re Paster*, 119 B.R. 468 (E.D.Pa. 1990) (reduction of Counsel's fee from $1,700 to $1,300 reversed). We believe that it has consequently become necessary to make our position on the issue of appropriate awards of counsel fees in consumer bankruptcy cases clearer.

Prior to the promulgation of the Local Bankruptcy Rules ("L.B.Rules") 2002.2 and 2002.3, effective July 1, 1988, this court had no mechanism in place to effect the mandate of B.Rule 2002(a)(7) that, only "after a notice and hearing," as defined in 11 U.S.C. § 102(1), are applications for compensation and reimbursement of expenses in excess of $500 in any cases, including consumer cases, to be allowed.[3] Since promulgation of those L.B.Rules, we have required and reviewed fee applications in all cases in which counsel seeks compensation in excess of $500. This included most of the consumer bankruptcy cases in this district, a species which will be represented by about 7,500 filings in this court in 1990.

This outpouring of fee applications in consumer cases has made us quite aware of the market rates generally charged for representation of debtors in such cases. In most cases, probably in excess of ninety-five (95%) percent, we have allowed exactly what counsel has requested. We believe that *Paster* has constituted the only appeal from the reductions we have made in all of the other consumer cases.

However, we cannot help but note that this appeal, although seemingly involving small difference of opinion between counsel and the court, was successful. This phenomenon might be explained by the fact that, since the dispute was small, the appellate court respected the strength of Counsel's convictions and felt that a relatively slight accommodation to it was warranted. However, a track record of success is sure to breed more appeals, which will ultimately tax the scarce resources of both the district court and this court.[4]

3. Prior to this time, this court only regularly reviewed fee applications in Chapter 11 cases, and reviewed the applications in other cases only upon the extremely rare instance of an objection by the Debtor, the Trustee, or a creditor.

4. We also note Counsel's success in an appeal from an Order of another judge of this court in a consumer fee Application decision in *In re Pendleton*, C.A. No. 90–1091, 1990 WL 29645 (E.D.Pa. March 15, 1990). There, the district court reversed the reduction of a $1,500 request to $1,000 because no party had objected to the request, citing *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713, 719 (3d Cir.1989). Prior to the *Pendleton* order, it had been universally held, in this jurisdiction, that fee applications in bankruptcy cases, being the archetype of "fund-in-court" cases, are subject to court review even if there is no objection by any other party. *See, e.g., In re Reader*, No. 87–3701, slip op. at 2–3 [845 F.2d 1014 (Table)] (3d Cir. March 10, 1988); *In re Metro Transportation Co.*, 107 B.R. 50, 53–54 (Bankr.E.D.Pa.1989); *In re National Paragon Co.*, 87 B.R. 11, 13 (Bankr.E.D.Pa.1988); and *In re J.A. & L.C. Brown, Inc.*, 75 B.R. 539, 539–40 (Bankr.E.D.Pa.1987). *See generally* Third Circuit Task Force, *Court Awarded Attorney Fees*, 108 F.R.D. 237, 255 (1985) ("the court must ... monitor the disbursements of the fund and act as fiduciary for those who are supposed to benefit from it").

Moreover, we note that, in *Paster*, our reduction of a $1,700 request to $1,300 was not remanded, but was set aside as an "abuse of discretion" because our banter with Counsel in a colloquy (never expecting an appeal) was believed to establish that our Order reducing the requested fee was based upon an impermissible "visceral reaction," which failed to explain the basis for our actions. We would hope, after reviewing several thousand such applications annually, our experience would be considered as somewhat more informed than an unreasoned reaction, be it ever so "visceral."

Experience also teaches us that it is totally unrealistic to think that creditors in a Chapter 13 case will spend the time to object and appear in court to argue against a fee requested by the debtor's counsel. Although, in a general sense, that portion of an excessive fee paid through a Chapter 13 plan comes directly out of creditors' pockets, the amount lost by any one creditor is simply too small to merit the expense and attention of a court filing. We believe that small creditors have the right to assume that a judge will make some effort to preserve the integrity of the Chapter 13 process by not merely signing off on fee applications by rote. If in fact our duties in this regard were performed by rote, with the substantive effect of a rubber stamp, then L.B.Rules 2002.2 and 2002.3 should simply be scrapped.

In light of the statements of the district court in *Paster*, we deem it necessary to explain our basis for our rulings on fee applications in Chapter 13 cases, and in Chapter 7 consumer cases as well.

■ We believe that, at bottom, the proper measure of what fee is reasonable in any context is ascertainment of what an informed client and an informed attorney would agree should be paid for certain services. If the marketplace naturally establishes a price for a service, then we believe that it is logical to assume that this is the figure to which an informed client and an informed attorney would agree.

The difficulty which is raised by most legal engagements is that the reasonable price of services performed is very difficult to measure. However, if, in fact, a certain service is essentially repetitive, and varies only to a small degree even when applied to different factual settings, then it should be very simple to establish the market rate for that service without the use of complex measurement tools. Therefore, if we could agree that filing and litigating a Chapter 13 bankruptcy does not have a large number of variables about it, we believe that it should be very easy to establish the market rate for its cost. It is what an informed client and informed attorney are actually agreeing to pay in the local marketplace. The inquiry of what fee is reasonable can end at that point.

We recognize that there are two general formulas for measuring what is a reasonable fee to be awarded to counsel in a particular engagement, the "lodestar" formula articulated in *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir.1973), *on remand*, 540 F.2d 102 (3d Cir.1976); and the twelve-factor test set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974). However, we believe that these tests were developed solely to measure what fees were reasonable in legal engagements which are not easily measurable by a ready reference to the market. In other words, they are a means to the end of putting a market value on something which is very difficult to measure by any other method. However, if the marketplace itself *is* able to yield a measurement of what fee is reasonable without the employment of the imprecise results yielded by these tests, then they should not be utilized. Therefore, if we could agree that there is a market rate for the handling of a typical Chapter 13 bankruptcy case, that should indeed be the end of the inquiry, without resorting to the imprecise means of the *Lindy Bros.* or *Johnson* tests to make our measurement.

We believe that most Chapter 13 bankruptcies—and most consumer bankruptcies in general—are indeed repetitive and that the labors required to handle them are, in most instances, not varied by the particular facts of an individual consumer's case.

There are of course exceptions. This jurisdiction is, in fact, the hotbed of perhaps the most creative Chapter 13 litigation in the country. However, for the most part, this creativity is displayed by civil legal services attorneys, whose freedom from economic demands has allowed them the luxury of experimentation. This is not to say that Counsel, whose Chapter 13 practice has greatly influenced the local private and legal services bar alike, practices without displaying creativity. Moreover, adapting the problems of diverse individuals to an effective and efficient standardized Chapter 13 mode—which is Counsel's trademark—itself demands great creativity. However, like all private attorneys, economics has driven Counsel to master repetition and efficiency. Hence, Counsel's work tends to be standardized, features use of forms, and relies on Counsel's handling a large number of matters in many cases on each trip to court. We therefore conclude that the handling of a Chapter 13 bankruptcy case is the paradigm of a repetitious sort of legal task, the value of which can be directly valued by review of the marketplace.

Further supporting the conclusion that Chapter 13 fees are standardized is the fact that, in negotiations between client and counsel, the fees are usually established at a set amount for handling the case rather than on an hourly basis. Some attorneys may charge extra if the case develops unexpected difficulties. However, many advertise that a set fee will be charged, and they should be held to the fixed figures quoted in their advertisements.

The only remaining question is, then, the value of the filing of a consumer bankruptcy case in this marketplace. In some courts, this is not an issue. For example, in the Northern District of Georgia, which has the highest annual number of Chapter 13 filings in the country, a maximum fee has been established by rather inflexible custom. In 1982, the "maximum" fee allowed for handling such a case was $500. *In re Waddell,* 21 B.R. 452, 453 (Bankr.N. D.Ga.1982) (NORTON, J.). Today, it is $750, only $250 of which is allowed to be paid at the outset of the case. *See also In re Ashton,* 92 B.R. 254 (Bankr.S.D.Ohio 1988) (local rule provides that an attorney is allowed to charge "up to a maximum of $650" for handling a Chapter 13 case).

There are a large number of decisions from various courts across the country over the past ten years which suggest that the market rate for Chapter 13 cases, in most jurisdictions, ranges from $450 to about $1,000. *See Harman v. Levin,* 772 F.2d 1150, 1152 n. 2 (4th Cir.1985) ($600 in Virginia); *In re Mellard,* 117 B.R. 716, 720 (Bankr.M.D.Fla.1990) ($1,000; fee for handling of a group of serial bankruptcies is limited to a total fee of $1,500); *In re Black,* 116 B.R. 818, 821 (Bankr.W.D.Okla. 1990) ($750); *In re Taylor,* 100 B.R. 42, 46 (Bankr.D.Colo.1989) ($970); *In re Richardson,* 89 B.R. 716, 717–19 (Bankr.N.D.Ill. 1988) ($750); *In re Lopez Rodriguez,* 76 B.R. 252, 252 (Bankr.P.R.1987) ($500 for majority, range is $450 to $600); *In re Whitman,* 51 B.R. 502, 504, 508 (Bankr.D. Mass.1985) ($500); *In re Morgan,* 48 B.R. 148, 152 (Bankr.D.Md.1985) ($650); and *In re Perros,* 14 B.R. 515, 518 (Bankr.E.D.N. Y.1981) ($550).

Several of these cases and the court in *In re Paul,* 100 B.R. 38 (Bankr.D.Colo.1989), a companion to *Taylor, supra,* utilize a multi-factor test extracted directly from or similar to that recited in *Johnson, supra. See Harman, supra,* 772 F.2d at 1152–54; *Morgan, supra,* 48 B.R. at 151–52; and *Perros,* 14 B.R. at 517–18. The *Harman* and the *Paul* courts, emphasize respectively, the facts that "Chapter 13 bankruptcy cases often involve relatively routine questions with which regular practitioners quickly become familiar," 772 F.2d at 1153, and that, with the use of "basic forms …, a typical Chapter 13 case may only involve filling in the blanks." 100 B.R. at 41.

Locally, prior to *Paster,* the only reported decision which we could locate on the subject of attorney's fees in a Chapter 13 case was *In re Richardson,* 14 B.R. 755, 757 (Bankr.E.D.Pa.1981), in which our predecessor, Judge King, commenting on poor quality advocacy, stated that "($900.00) is an excessive and unreasonable

fee for filing this particular chapter 13 case."

We recently addressed an appropriate measure of compensation for counsel appointed to represent Chapter 7 bankruptcy trustees in this jurisdiction in *In re Rheam of Indiana, Inc.*, 111 B.R. 87, 96–99 (Bankr.E.D.Pa.1990), setting the maximum at $125 per hour for services performed in a case in which the tasks were ministerial. *See also In re United Church of the Ministers of God*, Bankr. No. 87–01910S, slip op. at 4–5, 1990 WL 5308 (Bankr.E.D.Pa. Jan. 19, 1990) (trustees performing difficult services in high-profile Chapter 11 cases were limited to rate of $125/hour where this court established that rate at the outset of the engagement). In the *Rheam* Opinion, *id.* at 97, we stated the following in furtherance of a standardization of rates of counsel:

> Consideration of the prevailing market rates as a factor in fixing an attorney's compensation suggests that some degree of standardization of rates of counsel for performing certain routine tasks is appropriate.... Establishment of benchmarks of rates for compensation appears to us to be a legitimate means of standardization of rates of counsel, a practice which has been widely encouraged. *See* Federal Courts Study Committee, *Tentative Recommendations for Public Comment*, 134–35 (December 22, 1989); Report of Third Circuit Task Force, *Court Awarded Attorney Fees*, 108 F.R.D. 237, 260–62 (1985); and Federal Judicial Center, *Attorney Fee Petitions; Suggestions for Administration and Management* 43 (1985) (footnote omitted).

We acknowledge that, as inflation pushes prices upward, the guidelines for fees recited in dated cases must be adjusted. *Id.* at 98. However, the Consumer Price Index has only risen about twenty (20%) percent in the last five years and about thirty-five (35%) percent over the last nine years. *Id.* Therefore, we should adjust the figures

recited in *Whitman* and *Morgan* for Boston and Baltimore, respectively, upward to $600 and $800. The *Perros* figure for New York might now be adjusted upward to $750.

However, Counsel would probably agree that the best indicator of the present range of fees in this jurisdiction are the statements of the highly-respected senior member of Counsel's firm himself, recited in materials for a seminar conducted in September, 1990, as follows:

> Typical fees for consumer debtor's counsel in Pennsylvania currently range from $400 to $700 for chapter 7 cases, and $700 to $1200 for chapter 13 cases. There are, of course, exceptionally complex consumer cases for which the fee may be much larger.

M. Miller, *Attorney Fees in Consumer Bankruptcies*, CONSUMER BANKRUPTCY 204 (Pa.Bar Inst.1990).[5]

■ We now return to the particular case at bench. This case presented no particular unusual aspects or problems. The only documents filed were a form motion to extend the time for filing the requisite Schedules and Plan, Counsel's completed form Schedules and Plan, a brief Answer to Penn's Objections to confirmation (a filing not required by local Rule or practice), a form application for compensation, and the instant motion. The only unusual service identified was attendance for 1½ hours at PHEAA's R2004 Exam. While Counsel's services were typically well done and deserving of an allowance at the upper range of the market rate for allowable fees in a typical Chapter 13 case, they were and are, in our view, clearly not such as would justify the award of a fee beyond the normal range. Therefore, we fixed the fee at the uppermost of the range of the market rate.

Counsel's two-pronged argument on reconsideration, *see* pages 729–730 *supra*, fails to persuade us that our original deci-

---

5. In making this quotation, it should not be thought that we are hoisting Counsel on his own petard. In testimony reported by Judge Fox in *In re Pendleton* Bankr. No. 88–13942F, slip op. at 8 (Bankr.E.D.Pa. Jan. 10, 1990), *rev'd*, C.A.

No. 90–1091, *supra*, the United States Trustee set the market range at $350 to $1,000. Therefore, Counsel's statements must be recognized as a best case scenario.

sion was incorrect. There is no reason to believe that there should be a correlation between the trustee's commissions, capped at ten (10%) percent of payments made by a debtor under a plan, 28 U.S.C. § 586(e)(1)(B)(i), and the fees awarded to counsel in a given case. A case in which an indigent debtor is attempting to save a modest home and may pay very little to the trustee may require far more labor and creativity than the instant case of a well-educated and relatively financially-secure veterinarian who is able to make substantial payments to unsecured creditors, including his considerable student loan creditors. Instructively, no reported case has suggested that the magnitude of plan payments should have any bearing on counsel's allowable compensation.

Counsel's attempt to assert a *Lindy Bros.* lodestar justification for a higher fee fails as well. The "Itemization of Services" attached to the instant motion includes such plainly non-compensable entries as pre-petition services (1.4 hours), *see In re St. Joseph's Hospital,* 102 B.R. 416, 417–18 (Bankr.E.D.Pa.1989); preparation of the fee application (1.4 hours), *see J.A. & L.C. Brown, supra,* 75 B.R. at 540; and *In re Shaffer–Gordon Associates,* 68 B.R. 344, 348–50 (Bankr.E.D.Pa.1986); and grossly vague and lumped statements of services performed, *e.g.,* "Conference with client" (1 hour), "Contacts with trustee, debtor and creditors" (2 hours). *See St. Joseph's Hospital, supra,* 102 B.R. at 418; *In re Metro Transportation Co.,* 78 B.R. 416, 418 (Bankr.E.D.Pa.1987), *aff'd in part & remanded in part on other grounds,* 107 B.R. 50 (E.D.Pa.1989); and *In re Amatex Corp.,* 70 B.R. 624, 627–28 (Bankr.E.D.Pa. 1985). Other time entries appear clearly inflated, such as the time allotted for Appearance at the Debtor's meeting of creditors pursuant to 11 U.S.C. § 341 (1 hour) and the confirmation hearing (.6 hour). These figures are given without the acknowledgement that counsel very likely appeared on many other cases at the same time. The ultimately uncontested confirmation hearing in this case was, by our memory, concluded in a matter of seconds.

Our normative review of the Itemization of Services reveals that, in fact, no more than 12 hours of services are billable. Allowing the $100 hourly rate which Counsel suggested yields the $1,200 allowed. We will not increase that figure.

Finally, we add a word about fees in Chapter 7 consumer cases. As Counsel's own published work suggests, the market rate for representation of a debtor in a typical no-asset Chapter 7 case, *i.e.,* one which does not present the rare instance of a dischargeability contest or other unusual problems, is less than that in a Chapter 13 case, in the range of $400 to $700 per case. We concur that the services required in a Chapter 7 case, *i.e.,* the filing of papers and attendance at a § 341 meeting for about five minutes, are, like those performed in an uncontested divorce, among the simplest of non-adversarial legal problems which any lawyer will encounter and are therefore even more susceptible to routinization than the services performed in a typical Chapter 13 case. Multiple court appearances, the necessity to tend to a debtor's remittance of payments, and the longevity of a Chapter 13 case (3 to 5 years) are all absent in the typical Chapter 7 case, which often requires no court appearances or payments and terminates in about six months.

There are relatively few reported cases nationally relating to the market rate for counsel fees in no-asset Chapter 7 consumer filings. Those in existence suggest that the market rate for handling no-asset Chapter 7 cases should be less than the market rate for handling Chapter 13 cases. In *In re Easter,* 105 B.R. 724, 725 (Bankr. S.D.Fla.1989), the court stated that the fee generally charged for handling a joint Chapter 7 case in that jurisdiction was $500 to $600. In *In re Wyslak,* 94 B.R. 540, 541–42 (Bankr.N.D.Ill.1988), the court performed a survey of fees disclosed under 11 U.S.C. § 329 in 345 no-asset Chapter 7 cases in that court (Chicago), revealing that fees in excess of $850 were rare, with most clustered between $500 to $850. Our own survey of the first 86 of all Chapter 7 cases (not just no-asset consumer cases) filed in this district in 1990 yielded the following range of fees disclosed under § 329:

| Fee Disclosed | Number | Pct. | Cumulative Pct. |
|---|---|---|---|
| $500 or less | 46 | 53.5 | 53.5 |
| $501 to $1,000 | 30 | 34.9 | 88.4 |
| $1,001 to $2,000 | 6 | 7.0 | 95.4 |
| over $2,000 | 4 | 4.6 | 100.0 |
| | 86 | 100.0 | |

This range of fees is broader than the range in Chapter 13 cases. However, this sampling included business cases and asset cases. Furthermore, we attribute this range in large part to the fact that almost all Chapter 13 cases are filed by practitioners who handle such cases *en masse* with at least some degree of sophistication, while Chapter 7 cases, although often handled by experienced practitioners, are more likely to be attempted occasionally by "amateurs" who pass their efforts at self-education along to their clients. The vast majority of experienced Chapter 7 practitioners wisely avoid the extra labors required by B.Rule 2002(a)(7) and L.B.Rule 2002.3(a) by charging their clients $500 or less. We have rarely allowed a fee over $750 in any no-asset Chapter 7 case.

In the context of this description of our practices in ruling on fee applications in consumer cases, we conclude that we must deny Counsel's motion seeking reconsideration of our Order of October 9, 1990, limiting Counsel's compensation to $1,200. An appropriate Order will be entered.