**In re Calvin Robert WRIGHT and Annette Sanders– Wright, Debtors.**

**No. SV–01–19115–GM.**

United States Bankruptcy Court, C.D. California.

March 11, 2003.

Jeffrey N. Wishman, Los Angeles, CA, for debtors.

Elizabeth F. Rojas, Los Angeles, CA, Chapter 13 Trustee.

## MEMORANDUM OF OPINION ON DEBTORS' ATTORNEYS' APPLICATION FOR SUPPLEMENTAL FEES

GERALDINE MUND, Chief Judge.

Debtors filed Chapter 13 on September 25, 2001 represented by the firm of Bayer, Wishman & Leotta ("BW & L"). In the Rule 2016(b) statement at the time the case was filed, the firm set forth that it had received $3,185 and that there was a contemplation that the total amount that would be due for legal services rendered and to be rendered in connection with the case was $5,185. It also stated that "the undersigned has not shared or agreed to share with any other entity, other than with members of the undersigned's law firm, any compensation paid or to be paid."

On December 11, 2001, the Chapter 13 plan was confirmed with a 9%, 44–month payout. On December 19, 2001, the Court awarded BW & L the amount of $2,000 under the "no-look process" to be paid through the plan.

Thereafter, on June 28, 2002, ABN Amro Mortgage Group, Inc. filed a motion for relief from stay as to the debtors' home. An opposition to the motion was filed by the applicant. The hearing took place on July 25, 2002 and Faye Barta appeared on behalf of the debtors. The hearing was continued to August 8, 2002. On August 8, the Court was advised that an adequate protection stipulation would follow and no appearance was made at that hearing. The stipulated order was lodged with the Court on August 16, 2002, having been signed on August 6, 2002 by Dana Bruce as attorney for debtors. The Court entered the order in conformance with the adequate protection stipulation.

On September 2, 2002, BW & L lodged its application for supplemental fees requesting $1,500 for work done on the motion for relief from stay. The supplemental fee request lists 17 entries totaling 8.15 hours. Sixteen of those entries name Dana C. Bruce as the attorney and one lists Faye Barta. The entries are reproduced below.

| DATE | WORK PERFORMED | TIME | ATTORNEY |
| --- | --- | --- | --- |
| 7/03/02 | Review File re Mtn Relief | .10 | Dana C. Bruce |
| 7/03/02 | Ph Call Cheryl Schreger re accting | .10 | Dana C. Bruce |
| 7/09/02 | Review fax from Cred. Re acting *[sic.]* | .25 | Dana C. Bruce |
| 7/09/02 | Review Docs from Client re accting | .5 | Dana C. Bruce |
| 7/09/02 | Ph Call Cred Atty re APO | .25 | Dana C. Bruce |
| 7/10/02 | Draft Opp to Mtn Relief | 1.5 | Dana C. Bruce |
| 7/10/02 | Meeting w/Client re Opp & Acct | 2.0 | Dana C. Bruce |
| 7/18/02 | Ph Call Client re Status | .25 | Dana C. Bruce |
| 7/18/02 | Ph Call Cred Atty re Status | .10 | Dana C. Bruce |
| 7/18/02 | Draft Letter to Cred Atty | .25 | Dana C. Bruce |
| 7/24/02 | Ph call Joy at Melmet's re Status | .10 | Dana C. Bruce |
| 7/24/02 | Ph call Faye Barta re Hrg on Motion | .25 | Dana C. Bruce |
| 7/25/02 | Appearance at hrg | 1.0 | Faye Barta |
| 8/05/02 | Ph. Call Melmet's office re APO | .10 | Dana Bruce |
| 8/06/02 | Rev. APO/Ph Call Schreger–Change | .25 | Dana C. Bruce |
| 8/07/02 | Rev. Amended APO/Fax to Schreger | .25 | Dana C. Bruce |
| 7/25/02 | Draft Supplemental fee app | 1.0 | Dana C. Bruce |

**TOTAL HOURS:** 8.15 Hours

RATE: $250 per Hour (8.15 × 250 = 2,037.50)

| | |
|---|---|
| **TOTAL FEES:** | **$2,037.50** |
| **COURTESY ADJUSTMENT:** | **$ 537.50** |
| **TOTAL FEES REQUESTED:** | **$1,500.00** |

I set this application for hearing because of my concern for the way that Faye Barta's time was billed. Ms. Barta is what is referred to in the Central District of California as an "appearance attorney." In other districts she might be identified as a "contract attorney" or "temporary attorney." The three terms are used interchangeably. In the course of a day, Ms. Barta may appear in Court on behalf of a variety of clients of other firms.[1] She is paid a flat fee for each appearance directly from the law firm which hires her. In general she has no prior or subsequent relationship to the debtor or creditor for whom she is appearing. However this was a somewhat unusual case in that Ms. Barta appeared for the Wrights at the 341(a) and all confirmation hearings, as well as at the Motion for Relief from Stay. The pre-confirmation work was absorbed in the $2,000 "no look" fee and therefore was never revealed to the Court.

On a given calendar, Ms. Barta often appears for both debtors and creditors. On July 25, 2002, during a 2 hour, 16–minute period (9:00—11:16 A.M.) Ms. Barta made a total of 12 appearances for five attorneys before the three judges in the San Fernando Valley Division.[2] For this she received a total of $435. None of the other appearances had substantive work. Ms. Barta's declaration states that she spent at least one hour on the Wright case, involving negotiations in the hall, and that several days before the hearing she spent some 20 minutes in reviewing the papers, which was followed by a 15 minute phone call with Leon Bayer and Dana Bruce (for which the debtors were not charged by BW & L). For this Ms. Barta was paid $75 as a flat fee from BW & L.

This Court has found that Ms. Barta does a competent and professional job in her appearances and nothing in this Memorandum of Opinion is meant to disparage her. The issue is how debtors' counsel's firm should be compensated for use of a temporary attorney to make a court appearance or do other limited work on behalf of the client and what disclosures need to be made to the client and the Court.

Oral argument was held on October 8, 2002 and the Court took the matter under advisement. In an attempt to obtain further specific information concerning the relationship of BW & L and Ms. Barta, on October 18, 2002, the Court entered an order that the applicant provide a declaration of the amount paid to Ms. Barta for her appearance and any related information concerning the amount of time or support that was provided to her by the firm for which no fees have been requested, as well as a summary of the July 24, 2002 phone call. Rather than providing the information, the applicant filed a response that it was withdrawing its request for Ms. Barta's fees as this matter was costing more than it was worth. It is not

1. Although there may be ethical issues raised by a temporary attorney who appears for a given creditor in one case and then switches hats to appear for a debtor against that creditor in another case (and vice versa), that is beyond the scope of this opinion and will not be dealt with here.

2. The details were provided by Ms. Barta in her declaration filed Nov. 15, 2002.

clear whether the statement in the response is an actual withdrawal, but on December 12, 2002 a new fee application was filed which reflected Ms. Barta's appearance but removed the charge for it. The Court does not accept this attempt to create mootness.

## I. MOOTNESS

■ The general rule is that federal courts do not hear a matter unless it can be categorized as a "case or controversy." However, approval of attorneys' fees for debtor's counsel in a chapter 13 case does not seem to fall into the normal two party (multiple party) case-or-controversy scenario. Federal Rule of Bankruptcy Procedure 2017(b) allows the Court on its own initiative to review post-petition payments to be made to the debtor's attorney and determine whether they are excessive even if there was no opposition to the fees being charged. To that extent, a review of fees is more in the nature of an administrative matter and might be excluded from the case-or-controversy requirement of Article III of the Constitution. But even if Article III applies, the Court must still determine whether a decision on this is worth the time.

■ To determine whether a matter is moot, the Court must consider the central question: "whether decision of a once living dispute continues to be justified by a sufficient prospect that the decision will have an impact on the parties." Wright, Miller & Cooper, *Federal Practice and Procedure,* Jurisdiction 2d § 3533 (pocket part p. 251) (West 2002). A very slender possibility of recurrence can keep an issue alive for constitutional purposes and the higher the level of public interest, the lower the probability of recurrence is needed to justify a decision. *Id.* § 3533.1 (main volume p. 224) (1984).

There are 21 bankruptcy judges in the Central District of California and BW & L represents chapter 13 debtors in front of many (if not all) of them. The issue of paying debtor's counsel for use of an appearance attorney arises on a regular basis. There is no consistency to the fee applications submitted by various attorneys, as different firms seem to use different methods. Some follow the format used in this case of listing the appearance attorney by name and billing an hourly rate, while some charge an appearance attorney as a cost. Given the number of court appearances covered by temporary attorneys, it is surprising that more do not show up on applications for supplemental fees, which may indicate that some firms are presenting inaccurate billing statements. This issue is an important one in the orderly and consistent handling of chapter 13 cases and therefore is of high public interest. The issue must be decided and this is an appropriate case for that resolution.

## II. USE OF TEMPORARY ATTORNEYS

A temporary lawyer usually is hired by other lawyers, law firms and corporate legal departments ... to work on a single matter or a number of different matters, depending upon the firm's staffing needs and whether the temporary lawyer has special expertise not otherwise available to the firm.... Economics is the principal reason for the emergence of lawyer 'temping' because it permits a firm to service client needs during particularly busy periods by engaging an experienced attorney, without incurring the expense of hiring a permanent employee.

George C. Rockas, *Lawyers for Hire and Association of Lawyers: Arrangements that are Changing the Way Law is Prac-*

*ticed,* 40 B. B.J. 8 (November/December 1996).

There is a growing use of temporary attorneys by law firms to meet short-term needs in various areas of practice. *See,* e.g., Kathryn Fenton, *Use of Temporary or Contract Attorneys,* 13 Antitrust 23 (Fall 1998). Even large firms have been urged to hire contract attorneys to keep costs down and increase firm profits. *See* Carl Schieneman & Valerie C. Horvath, *Legal Staffing for the New Millennium,* 7 Lawyers J. 9 (Apr. 7, 2000).

The expanded use of temporary attorneys raises issues of proper disclosure to the client, billing practices, and ethics. It has led to several ABA and California ethics opinions.

To appear in the bankruptcy court for the Central District of California, an attorney must be of good moral character and in good standing before the State Bar of California as well as admitted to the District Court of the Central District of California.[3] All attorneys are required to comply with the rules and ethics imposed on them by the state. The American Bar Association ("ABA") Model Rules[4] are also relevant for guidance.

The Rules of Professional Conduct in California and the ABA Model Rules are not identical, although the California State Bar opinions sometimes favorably refer to ABA opinions. There are two California and three ABA opinions which deal with the use of a contract or temporary attorney.[5]

### A. CALIFORNIA RULES AND OPINIONS

If the amount to be charged the client is reasonably foreseeable as exceeding $1,000, there must be a written agreement with the client[6]. The agreement must

---

3. U.S. District Court, CA(C) Local Rule 83–2.2.1; U.S. Bankruptcy Court, CA(C) Local Rule 2090–1(a)(1).

4. U.S. District Court, CA(C) Local Rule 83–3.1.2 states: "In order to maintain the effective administration of justice and the integrity of the Court, each attorney shall be familiar with and comply with the standards of professional conduct required of members of the State Bar of California and contained in the State Bar Act, the Rules of Professional Conduct of the State Bar of California, and the decisions of any court applicable thereto. These statutes, rules and decisions are hereby adopted as the standards of professional conduct, and any breach or violation thereof may be the basis for the imposition of discipline. The Model Rules of Professional Conduct of the American Bar Association may be considered as guidance."
 These standards are also incorporated in Local Bankruptcy Rule 2090–1(e).

5. CA Formal Opinion 1994–138: Issue: Must an Attorney Comply with the Fee–Splitting Requirements of Rule 2–200 of the California Rules of Professional Conduct When the Attorney Hires an Outside Lawyer and When the Attorney Discloses a Rate to a Client but Pays the Outside Lawyer Less Than the Amount Disclosed.
 CA Formal Opinion 1996–147: Issue: How Must an Attorney Bill for Work on Two or More Matters at the Same Time? What are the Ethical Considerations Involved?
 ABA Formal Opinion 88–356: Temporary Lawyers
 ABA Formal Opinion 93–379: Billing for Professional Fees, Disbursements and Other Expenses
 ABA Formal Opinion 00–420: Surcharge to Client for use of a Contract Lawyer

6. The exceptions to this requirement are set forth in Cal. Bus. & Prof. § 6148(d), which states: (d) This section shall not apply to any of the following:
 (1) Services rendered in an emergency to avoid foreseeable prejudice to the rights or interests of the client or where a writing is otherwise impractical.
 (2) An arrangement as to the fee implied by the fact that the attorney's services are of the same general kind as previously rendered to and paid for by the client.

specify the "hourly rates, statutory fees or flat fees, and other standard rates, fees, and charges applicable to the case." CAL. BUS. & PROF. § 6148. Although not specifically stated, the required terms of an agreement are sufficiently specific that the firm must reveal if it expects to use a contract attorney and the way that the contract attorney will be billed to the client.

### 1. California Formal Opinion 1994–138

State Bar of California Formal Opinion No.1994–138 discusses methods of compensating an outside lawyer who is employed for a limited period and who, "other than working on particular matters ... has no other formal relationship with the law office or the client, and neither the law office nor the outside lawyer contemplate a permanent relationship." The first matter to be determined is whether the relationship between the law office and the outside attorney falls under the definition of "fee-splitting." This occurs only if the "outside·lawyer is paid a portion of the fee that is paid by the client to law office," which generally is through a percentage payment. If fee-splitting exists, California Rule of Professional Conduct 2–200(A)[7] applies. Since the compensation of Ms. Barta does not constitute fee-splitting,

Rule 2–200(A) is not relevant to this application.

Formal Opinion No.1994–138 then discusses the required disclosure to the client when fee-splitting is not involved, two examples of which are relevant to the BW & L relationship with Ms. Barta:

Method 2: Outside lawyer is paid an hourly rate that is less than the hourly rate for the outside lawyer's services billed to the client. For example, the outside lawyer is paid $50 an hour but is billed at $70 per hour to the client.

Method 3: Outside lawyer is paid a flat rate per day or week. For example, the outside lawyer is paid $150 per day.

Citing California Rule of Professional Conduct 3–500[8] and Business and Professions Code § 6068(m)[9], the opinion states that the law office is required to inform the client that an outside lawyer is involved in the case if the outside lawyer's involvement is a significant development. To determine whether the use of an outside lawyer constitutes a significant development, counsel must look at the circumstances of the particular case. Included in the relevant factors are "(i) whether responsibility for overseeing the client's matter is being changed; (ii) whether the new attorney will be performing a significant

(3) If the client knowingly states in writing, after full disclosure of this section, that a writing concerning fees is not required.
(4) If the client is a corporation.

**7.** Rule 2–200(A) states: "A member shall not divide a fee for legal services with a lawyer who is not a partner of, associate of, or shareholder with the member unless: (1) The client has consented in writing thereto after a full disclosure has been made in writing that a division of fees will be made and the terms of such division; and (2) The total fee charged by all lawyers is not increased solely by reason of the provision for division of fees and is not unconscionable as that term is defined in rule 4–200."

**8.** Rule 3–500 states: A member shall keep a client reasonably informed about significant developments relating to the employment or representation and promptly comply with reasonable requests for information.

**9.** B & P § 6068(m) states: "It is the duty of an attorney to do all of the following: ... (m) To respond promptly to reasonable status inquiries of clients and to keep clients reasonably informed of significant developments in matters with regard to which the attorney has agreed to provide legal services."

portion or aspect of the work or (iii) whether staffing of the matter has been changed from what was specifically represented to or agreed with the client."

This Court does not have any information on the disclosures made to the Wrights, although Ms. Barta seems to have performed a significant portion of their representation pre-confirmation and substantive post-confirmation negotiations in the hallway at the hearing on the Motion for Relief from Stay. It is clear that the clients knew that Ms. Barta was representing them in their court appearances, but there is no information on whether they were aware that she was a contract attorney and not an employee of BW & L. There is no evidence that they knew that her involvement on their behalf was limited to each court appearance and that she might not be representing them in the future if BW & L decided to hire another contract lawyer. Nor is there information that they consented to being represented by someone who was not affiliated with the firm. Therefore this opinion cannot determine whether sufficient disclosures were made.

While fee-splitting requires *written* consent and that the terms of the division of fees be fully disclosed to the client, cases such as the one before this court only require consent to the use of the temporary attorney. So long as the compensation of the outside attorney is not billed as a disbursement, the law office need not reveal the compensation arrangement with the outside attorney.

## 2. California Formal Opinion 1996–147

California State Bar Formal Opinion No.1996–147 (1994), which discusses double billing for the same physical time, explores the limits of client consent and the requirements when the fee is based on time spent. Using three hypotheticals, it holds that so long as the attorney creates a fair and reasonable fee agreement, which is fully explained to the client and is unambiguous and in writing, two clients can be billed a full hourly fee for the same hour, but only so long as each client has consented.[10] If the disclosure, understanding, and consent do not exist, "[w]hen a lawyer's fee is based on the time spent on a client's matter, the attorney may ethically charge the client only for that time." Even if the client does give informed consent, a legal fee may be unconscionable. A fee is unconscionable if the fee is in an excessive amount, if it involves payment for work which is not done, or if it is for work which is redundant, excessive or unnecessary. One measure of unconscionability is that the client did not get what s/he paid for. Another concerns the exclusivity of the attorney's time. If the hourly rate includes an element to compensate the firm because the attorney is precluded from working on other matters concurrently with that for this client, it is unconscionable for the attorney to bill each of the clients as though that client had the exclusive use of the attorney's time which, in fact, s/he did not.[11]

Looking at the reasoning behind Formal Opinion 1996–147 leads to the conclusion that if an appearance attorney is hired and paid a flat fee which is lower than the

---

10. The hypotheticals used in Cal. St. B. Formal Op. No.1996–147 do not involve different cases, but only different clients in the same case and therefore do not seem to apply that well to the facts before this Court.

11. Although the California opinion sets a somewhat different standard from the ABA ones, it refers to ABA Formal Opinion 93–379 for the discussion of whether attorneys who double bill have "earned" more than their usual hourly fee.

firm's hourly rate, this must be disclosed and fully explained to the client and the client must consent in writing. However, assuming that the firm's hourly rate includes a factor for exclusivity (as all hourly rates seem to), even with the above disclosure and consent, the firm cannot charge its hourly rate while paying the appearance attorney a flat fee which is below the amount being charged unless the appearance attorney provided a full hour of services for the client. Thus if California law is applied, assuming that there is disclosure of Ms. Barta's status to the Wrights, who consented to her representation, since Ms. Barta provided the Wrights with an exclusive hour, BW & L may charge the Wrights the reasonable rate for an attorney with equivalent experience for equivalent work. Even with disclosure and consent, if there had not been an exclusive hour given to the Wrights by Ms. Barta, BW & L would be limited to charging no more than the $75 paid to her.

## B. ABA OPINIONS

### 1. ABA Opinions 00–420 and 88–356

ABA Formal Opinion 00–420 specifically deals with surcharging a client when using a contract attorney. It reaffirms and clarifies an earlier holding in ABA Formal Op. No. 88–356 that—whether or not the client is charged for the work of the temporary lawyer—the client must be advised and consent when "the temporary lawyer is performing work for a client without the close supervision of a lawyer associated with the law firm.... On the other hand, where the temporary lawyer is working

under the direct supervision of a lawyer associated with the firm, the fact that a temporary lawyer will work on the client's matter will not ordinarily have to be disclosed to the client."

ABA Opinion 00–420 then directs that if the legal services of a contract attorney are billed to the client as an expense or cost, the client may be charged only the cost directly associated with the services, including expenses incurred by the billing lawyer to obtain and provide the benefit of the contract lawyer's services. No surcharge is allowed unless the client agrees otherwise.

The only guidance given on whether the attorney may bill the contract lawyer's charges to the client as fees for legal services (rather than as costs) is that if they are billed as fees, "the client's reasonable expectation is that the retaining lawyer has supervised the work of the contract lawyer or adopted that work as her own." ABA Formal Opinion No. 00–420.

### 2. ABA Opinion 93–379

ABA Formal Opinion No. 93–379 (Dec. 6, 1993) holds that when a lawyer simultaneously appears on behalf of multiple clients and the lawyer has agreed to bill the client solely on the basis of time spent, the lawyer is obliged to pass the benefits of these economies on to the client. "The practice of billing several clients for the same time or work product, since it results in the earning of an unreasonable fee, therefore is contrary to the mandate of Model Rules. Model Rule 1.5." [12] The Opinion goes on to state:

---

**12.** ABA Model Rule of Professional Conduct 1.5 states in part: "(a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
(1) the time and labor required, the novelty and difficulty of the questions involved, and

the skill requisite to perform the legal service properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

It goes without saying that a lawyer who has undertaken to bill on an hourly basis is never justified in charging a client for hours not actually expended. If a lawyer has agreed to charge the client on this basis and it turns out that the lawyer is particularly efficient in accomplishing a given result, it nonetheless would not be permissible to charge the client for more hours than were actually expended on the matter. When that basis for billing the client has been agreed to, the economies associated with the result must inure to the benefit of the client, not give rise to an opportunity to bill a client phantom hours .... The point here is that fee enhancement cannot be accomplished simply by presenting the client with a statement reflecting more billable hours than were actually expended.

ABA Formal Opinion No. 93–379.

When an appearance attorney is hired, it is generally understood by the hiring firm that she will be making court appearances on multiple matters for various attorneys during a given court session. Therefore, even if it is appropriate to bill Ms. Barta's work as legal fees rather than as expenses under ABA Formal Opinion No. 00–420 because there was supervision by BW & L or adoption of the work by the firm, ABA Formal Op. No. 93–379 determines that a statement showing more billable hours than were actually expended is an improper attempt to obtain an enhanced fee.

However, as in the California opinions, since Ms. Barta worked for the Wrights for an hour, billing her at a non-partner rate for one hour of equivalent work is not unreasonable.

## C. BANKRUPTCY ISSUES

Although the local rules direct the court to use the California standards of conduct, "federal courts must also consider the standards articulated in the relevant statutes and the decisional law which has evolved in bankruptcy cases addressing the issue at bar...." *In re Glenn Electric Sales Corp.*, 99 B.R. 596, 598–99 (D.N.J. 1988). Bankruptcy practice does not fit well in either the ABA or California models, in part because the judge has oversight responsibility for the bankruptcy case as well as serving as the decider of disputes. This is particularly true in the area of attorneys' fees.

"In a variety of situations, the Bankruptcy Code imposes on the judge the responsibility of measuring the propriety of the parties' fee requests. Other courts have this responsibility in some cases, but the important point may be the shift in the balance: In the ordinary case, control over fees may be the exception, while in bankruptcy it is the rule." John D. Ayer, *How to Think About Bankruptcy Ethics*, 60 Am. Bankr.L.J. 355, 398 (Fall, 1986). *See In re Busy Beaver Building Centers, Inc.*, 19 F.3d 833, 841–42 (3d Cir.1994) (discussing the duty of the bankruptcy court to review fees even if no opposition has been filed and the similarity of bankruptcy cases to "fund-in-court" cases as opposed to "statutory fee" cases since they often lack the adversarial nature which assures that "someone other than the court will closely review the fee request and will bring to the court's attention potential deficiencies,

(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) whether the fee is fixed or contingent."

hence ensuring a more precise fee award.") *See also In re Berg,* 268 B.R. 250 (Bankr. Mont.2001), citing *In re WRB–West Associates,* 9 Mont. B.R. 17, 18–20 (Bankr. Mont.1990) (found at 1990 WL 517058) discussing the duty of the applicant and the court.

In bankruptcy there are not just the two parties involved (lawyer and client) in the matter of fees. The court is the third party who has the responsibility of balancing the benefits and burdens for both the debtor and its attorney as well as for the estate and its professionals. The court must also protect the integrity of the bankruptcy court and process. This is inherent in the Bankruptcy Code, which mandates that information be provided to the court and all interested parties.

F.R.B.P 2016(a) requires the attorney who wishes to be paid from the estate to provide a detailed description of the services rendered, time expended and expenses incurred, as well as information on the terms of any sharing of the compensation with those who are not members or regular associates of the firm. The specific language on sharing is as follows:

> An application for compensation shall include a statement ... whether an agreement or understanding exists between the applicant and any other entity for the sharing of compensation received or to be received for services rendered in or in connection with the case, and the particulars of any sharing of compensation or agreement or understanding therefor, except that details of any agreement by the applicant for the sharing of compensation as a member or regular associate of a firm of lawyers or accountants shall not be required.

Thus, sharing of compensation is not prohibited or burdened by special requirements in a bankruptcy case, but the details of the agreement between the lawyers must be revealed to the court.

While an argument can be made that this provision is not applicable to direct payment of a temporary attorney as it does not fall within the "division of fees" definition of California Rules of Professional Conduct 2–200A, the bankruptcy rules apply to a different attorney/client relationship from that contemplated in the state rules. In the bankruptcy court, the judge is actively involved in that relationship. The judge must approve payment from assets in which the debtor may have an interest (if only residual in some cases), but where the trustee and other creditors have an even higher priority. F.R.B.P. 2002(a)(6) recognizes the interest of third parties when it requires that notice of a request for fees in excess of $1,000 be given to the debtor, the trustee, all creditors and indenture trustees. It is the judge who safeguards assets of the estate for the stakeholders. This cannot happen if the applicant has not made a complete disclosure to the court.

Once that disclosure is made, the court is empowered to examine the transactions and determine whether any of them would lead to excessive payment to the attorney. F.R.B.P 2017(b). If the court deems the compensation to "exceed the reasonable value of any such services," the court may cancel the agreement and order the return of the excessive part of the payment. 11 U.S.C. § 329(b). Case law has also recognized the expertise and broad discretion of the bankruptcy court to award attorneys' fees. *In re Anderson,* 936 F.2d 199 (5th Cir.1991). However, this Court has found no opinions specifically dealing with how to bill a temporary attorney in a bankruptcy case.

### III. RULES FOR BILLING FOR USE OF A CONTRACT ATTORNEY IN A BANKRUPTCY CASE

 This Court finds that full disclosure to the court is an absolute require-

ment of the bankruptcy process. Further, even with full disclosure to the court, the applicant must meet the requirements of the State Bar of California as to consent of the client to use of a temporary attorney when that attorney is performing a significant aspect of the work. This disclosure and consent must occur prior to the work being done. For the client to first find out about this when s/he meets the contract attorney in court does not fulfill the requirement of consent—though it would be allowed if the contract attorney was hired due to an unforeseen emergency or timely efforts to communicate with the client were fruitless.

■ If the applicant is seeking fees or costs for work done by a contract attorney, the application must reveal the use of the contract attorney and demonstrate that the client agreed to the use and billing rate of contract attorneys if the firm contemplated their use at the time that the firm was employed. Whether or nor the client has given general consent to the use of contract attorneys, the attorney of record for the debtor must also show that he/she/it advised the debtor who would be appearing on the debtor's behalf or demonstrate why the debtor was not advised in advance of the role and identity of the appearance attorney.[13] No sum over the amount paid to the contract attorney will be allowed unless specifically requested in the fee application along with disclosure of its basis. A basis may be that the contract attorney provided the client with an exclusive amount of time equal to that shown on the billing statement and that the hourly rate charged is what would be charged by an attorney with equivalent experience for equivalent work. Or it might consist of unbilled support by other attorneys in the firm. Or a surcharge may be requested as a fee enhancement, if it is supported by evidence upon which the enhancement is based.

■ If the firm seeks to receive an amount in excess of that which it actually paid the contract attorney, in determining the exclusive time which the contract attorney spent on its client, the firm will use the following process: If the appearance attorney who is paid a flat fee per matter and appears on multiple cases can segregate the time spent on a single matter, the law firm which hires him/her can bill for that amount of time (as exclusive to its client). But if the appearance attorney cannot segregate the discrete time spent on that client, the maximum amount of time to be attributed to the client is the total time spent (including travel and excluding any time which can be calculated on other specific cases) divided by the number of appearances made.

### IV. APPLYING THE RULES TO THIS CASE

■ BW & L hired Ms. Barta to make a court appearance on behalf of the Wrights. Since BW & L often use contract attorneys to make appearances on their chapter 13 cases filed in the San Fernando Valley division, it was required

---

**13.** The Court will soon be issuing a "Rights and Responsibilities Agreement Between Chapter 13 Debtors and Their Attorneys" in which the attorney agrees—among other things—to do as follows: (4) "Advise the Debtor who, if not the attorney, will appear on the Debtor's behalf at the 341(a) meeting or any court hearing." (5) "If the attorney will be using an appearance attorney to attend the 341(a) meeting or any court hearing, explain to the Debtor in advance, if possible, the role and identity of the appearance attorney. In any event, the attorney is responsible to prepare adequately the appearance attorney in a timely fashion and to furnish the appearance attorney with all necessary documents, hearing notes, and other necessary information in sufficient time to allow for review of such information and proper representation of the Debtor."

to reveal this and the billing practice in the employment agreement with the Wrights. There is no evidence that this occurred. There is no evidence that Ms. Barta was hired due to an unforeseen emergency or that the debtor's could not be notified in advance of her appearance. Because the work done by Ms. Barta was more than *pro forma*, whether the Wrights were charged or not, they needed to be informed in advance and to consent to the representation by Ms. Barta at this hearing. Since there is no evidence of notice and consent, the Wrights cannot be charged for Ms. Barta's time either as an expense or as a fee.

If there had been evidence of the prior informed consent by the Wrights, BW & L would have had three options:

(1) To charge the $75 actually paid as a disbursement;

(2) To present evidence that Ms. Barta spent an exclusive hour representing the Wrights, and seek the normal hourly rate for an attorney of equivalent experience and skill for the type of work done (presumably $250 in this case); or

(3) To present evidence substantiating an amount over and above the hours accounted for on the bills, such as the meaningful support given by BW & L due to the unbilled conference call.

However, since these items were not presented to the Court and there is no evidence of the required client consents, BW & L may not recover for the work performed by Ms. Barta.

The following judges of the United States Bankruptcy Court of the Central District of California join in the conclusions of law reached in the above opinion.

Arthur Greenwald and Kathleen Lax.