**In re Nicholas P. ARGENTO and Ruth Anne Argento, Debtors.**

**No. 00–42280–JBR.**

United States Bankruptcy Court,
D. Massachusetts.

Aug. 1, 2002.

Robert A. Cole, Shrewsbury, MA, for debtors.

## DECISION AND ORDER ON ATTORNEY'S APPLICATION FOR COMPENSATION AND APPLICATION FOR FEE

JOEL B. ROSENTHAL, Bankruptcy Judge.

This matter came before the Court on the Attorney's Application for Compensation and Application for Fee (the "Application") filed by Robert Cole, counsel for the above debtors. Attorney Cole seeks total fees of $12,837.50: no expense reimbursement is requested. The Application and Attorney Cole's Disclosure of Compensation Pursuant to Rule 2016(b) (the "Rule 2016(b) Disclosure") state that $1,500 was paid as a retainer although the Application also indicates that $2,700 has also been paid to Attorney Cole postpetition. For the reasons set forth herein, the Court awards total fees of $8,500.

### FACTS

On April 24, 2000 Attorney Cole filed a voluntary Chapter 13 petition on behalf of Nicholas and Ruth Anne Argento (the "Debtors"). On May 8, 2000 Attorney Cole filed his Rule 2016(b) Disclosure in which he stated in part:

Pursuant to 11 U.S.C. sec. 329 and Rule of Bankruptcy Procedure 2016(b), the undersigned, attorney for the debtors in

this case, makes this statement setting forth the compensation paid or agreed to be paid to the undersigned for services rendered or to be rendered in contemplation of and in connection with the case by the undersigned, and the source of such compensation.

1. Prior to the filing of this disclosure statement, the debtors in this case have paid to the undersigned the sum of $1,500 plus $185 for the filing fee in this case.

The source of the PAID sum was: **Debtor's** [sic] **earnings**

2. In addition the debtors have agreed to pay the following:

NOT APPLICABLE

\* \* \* \* \* \*

4. The undersigned has not received any other payment in this case, and has no other agreement, except as set forth herein.

There are no attachments to the Rule 2016 Disclosure and its statement is clear: the Debtors paid Attorney Cole $1,500 prior to the commencement of this case and there is no retainer agreement. The Application, however, indicates otherwise. For the first time, the Court was informed that some, and perhaps all, of the $1,500 was paid postpetition and that there is indeed a retainer agreement (the "Retainer Agreement") that addresses Attorney Cole's compensation. The Retainer Agreement, a copy of which was attached to the Application, is signed by Attorney Cole and Mr. Argento but not the co-Debtor; it is dated as of the Petition Date. The Retainer Agreement itself is ambiguous and, when read in connection with the Application and Rule 2016(b) Disclosure, reflects a general carelessness in the preparation of these documents. For example, Paragraph (I) of the Retainer Agreement provides for the retention of Attorney Cole

to "provide financial counseling, prepare all necessary schedules, the chapter 13 Plan, and attend the § 341 meeting with the Client. . . ." There is no indication of the cost charged or to be charged for these services. The Retainer Agreement also provides that "pursuant to Local Rule 9010–3(d), any **subsequent** matters, Motions to Dismiss, objections to Proofs of Claims [sic], etc. will be billed to the Debtor at a rate described below in Paragraph (2)." (Emphasis added). There is no Paragraph (2), however. There is a Paragraph (II) which provides:

> The Attorney shall receive reasonable compensation from the client for his **subsequent** services in the following manner and means:
>
> (a) A retainer of $1,500.00 * Flat fee & $20.00/creditor over 12 in #
>
> (b) The services of the Attorney, or any associates shall be recorded on an hourly basis with fees charged as follows:
>
> 1. Preparation Time at $150.00 per hour
>
> 2. Court time at $200.00 per hour
>
> 3. Associate time at $–0–per hour
>
> Said charges under this paragraph are due and payable by the Client only after the amount of the retainer has been reached by the hourly billings. (Emphasis added).

Although the Rule 2016(b) Disclosure is unambiguous in its assertion that Attorney Cole received $1,500 prepetition, it is unclear what portion of the $1,500 "retainer", if any, was paid prepetition because of an inconsistency in the Application itself. Paragraph 3 of the Application reads as follows:

> That *prior to and since the inception of this matter*, your applicant has been paid the sum of $1,500.00 to prepare and file the original Chapter 13 bankruptcy and appear at the ch. [sic] 341 hearing;

and that pursuant to Local Rule 9010–3(d), advised the clients, who agreed, in writing at the commencement of the representation as to additional fees for adversary proceedings [1] and other matters. (See: Attached Retainer Agreement).

(Emphasis added). The foregoing language strongly suggests that some, but not all, of the $1,500 was paid postpetition. Yet the Application contains a further inconsistency. A chart included in the Application indicates that the Debtors paid Attorney Cole a total of $2,700 postpetition from July 26, 2000 to August 31, 2001 in installments ranging from $200 to $500, including two $500 payments only a week apart, the first on July 26, 2000 and the second on July 31, 2000.[2] The Application does not identify the source of any of these payments.

On May 24, 2000 the Debtors filed their chapter 13 plan and proposed a 100% "partial liquidating" plan that contemplated the sale of two undeveloped parcels of land located in Boylston, Massachusetts and valued by the Debtors in their plan at approximately $500,000. For the first six months, however, they proposed making plan payments of $150 per month. On June 23, 2000 the Chapter 13 Trustee conducted her examination of the Debtors and as a result—recalculated their excess income. At that time the Debtors and Attorney Cole executed a Modification of Plan Prior to Confirmation and increased the monthly payments to $250.[3] The plan was confirmed on November 30, 2000.

The Debtors subsequently sought and were granted an additional six months to continue making plan payments of $250 while they attempted to sell the undeveloped lots.

The lots, along with the Debtors' residence, were encumbered by a mortgage but the Debtors made no postpetition payments on the secured debt and were in arrears at the time of the bankruptcy filing. The secured creditor filed two motions for relief. The first was denied when the secured creditor failed to appear at the hearing on its motion; the second was denied for failure to comply with the local rule governing motions for relief. Shortly before and immediately after the filing of the second Motion for Relief, the Debtors made three payments to Attorney Cole. In February 2002 the Debtors sought to sell the two undeveloped lots, and, after some modifications to the sale notice and after a sealed bid sale conducted by the Court, they ultimately obtained approval to sell those lots.

The Application and time records attached thereto indicate that Attorney Cole spent 77.5 hours during the period July 7, 2000 through May 14, 2002 working on this matter. Pursuant to the Retainer Agreement, Attorney Cole billed his time at $150.00 for out-of-court time and $200 for court time. He seeks a total award of $12,837.50, including the $2,700 already paid.

## DISCUSSION

The award and payment of fees to an attorney representing a chapter 13 debtor

---

1. The Retainer Agreement expressly excludes adversary proceedings from its terms. The Retainer Agreement provides that representation of the Debtors in any adversary proceedings would be subject to further agreement.

2. The payments are as follows:
 $500 on July 26, 2000
 $500 on July 31, 2000
 $500 on May 11, 2001

$250 on August 6, 2001
$250 on August 13, 2001 and
$500 on August 31, 2001.

3. The original Schedules I and J verified by the Debtors on May 8, 2002 reflect a net loss of approximately $6,000 per month. Amended Schedules I and J. verified on May 23, 2000, indicate disposable income of $253.83.

involve the interplay of several sections of the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and, in this jurisdiction, the Massachusetts Local Bankruptcy Rules. Perhaps this is the reason why Judge Lundin refers to this areas as "heavily regulated". 1 KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY § 25.4 (3d ed.2000). "More so than most other aspects of Chapter 13 practice, the U.S. trustee and standing Chapter 13 trustees look over the shoulders of debtors' lawyers to monitor whether debtors are getting what they are paying for." *Id.* Although this close monitoring may exist, it generally occurs outside the view of the Court and it is only when counsel file a fee application, either voluntarily or otherwise, that the Court has a chance to see the complete picture of the billing practices engaged in by a chapter 13 attorney. In the instant case the Debtors' attorney has engaged in practices which can be characterized as impermissible and unacceptable; this Court, however, is concerned that the billing practices in this case may not be an isolated instance. Whether through inadvertence, misunderstanding of the interplay among the relevant Bankruptcy Code sections and rules, both federal and local, or even disregard for these regulatory provisions, there may be some misunderstanding among seasoned and regular chapter 13 practitioners regarding when and how fees can be paid. The Court therefore offers the following observations to Chapter 13 practitioners so they understand the procedure this Court expects they will follow.

## REQUIREMENTS FOR THE DISCLOSURE OF COMPENSATION

 Requirements for the disclosure of compensation under the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure are not chapter-specific; they are applicable to all counsel for debtors under any chapter of the Code. They apply whether or not counsel's employment must be approved by a bankruptcy court. *See* 11 U.S.C. § 329(a)[4] and Fed. R. Bankr.P.2016(b).[5] The language of section 329(a) is clear. Counsel must disclose compensation they have received or expect to receive for services rendered or to be rendered in contemplation of any debt counseling or in connection with filing or conducting the bankruptcy. Importantly the disclosure must identify the source or sources of any actual or anticipated payments. Moreover the disclosure is mandatory without regard to whether an attor-

4. Section 329(a) provides:

Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

5. Fed. R. Bankr.P.2016(b) provides:

Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trust-ee within 15 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity. The statement shall include the particulars of any such sharing or agreement to share by the attorney, but the details of any agreement for the sharing of the compensation with a member or regular associate of the attorney's law firm shall not be required. A supplemental statement shall be filed and transmitted to the United States trustee within 15 days after any payment or agreement not previously disclosed.

ney applies to the Court for compensation. The required disclosure extends beyond any retainer paid immediately before a bankruptcy filing and encompasses all payments, or any agreements to make payments, made (i) in contemplation of or in connection with a bankruptcy and (ii) within one year of the actual filing. Thus there can be no doubt that section 329(a) required Attorney Cole to disclose the Retainer Agreement, including the provision to pay him additional consideration for postconfirmation services.

■ Fed. R. Bank. P.2016(b) is equally clear and provides some additional details for the disclosure requirements. Specifically it requires the statement to be filed within 15 days after the entry of the order for relief or as otherwise ordered by the court. In addition to filing the statement of compensation, the debtor's attorney must serve it on the United States Trustee. The last sentence of Rule 2016(b), an important provision but one overlooked in this case, clarifies that disclosure of compensation is an ongoing obligation. "A supplemental statement shall be filed and transmitted to the United States trustee within 15 days after any payment or agreement not previously disclosed." Fed. R. Bankr.P.2016(b); *In re TJN, Inc.,* 194 B.R. 400, 402–03 (Bankr.D.S.C.1996); *See In re John G. Berg Associates, Inc.,* 138 B.R. 782, 787 (Bankr.E.D.Pa.1992). In the instant case this provision warranted the postpetition filing of a supplemental statement to disclose the postpetition payments not otherwise disclosed and would have

put the Court on notice as to the problems made evident in the Application.

■ Finally MLBR 13–7(a) governs prepetition retainers in this jurisdiction. "The amount of any retainer *received* by debtor's counsel shall be included in the Statement of Attorney Compensation filed pursuant to Fed. R. Bankr.P.2016(b)." (Emphasis added). The local rule contemplates that attorneys must separately disclose the amount actually received prepetition and any amounts to be paid postpetition.[6] They should not be aggregated. Although there is no official form for the Statement of Attorney Compensation filed pursuant to Rule 2016(b), one frequently-used form, often referred to as Procedural Form B 203 or Form B 203, specifically calls for separate reporting of amounts received prepetition and the balance due and the Court urges all Debtors' attorneys to use this form.[7]

In the instant case Attorney Cole did not use Procedural Form B 203 but the Rule 2016(b) Disclosure is clear: $1,500 was paid prepetition and agreements to pay additional amounts were described as "Not Applicable." As noted, however, the Application just as clearly states that $2,700 was paid postpetition while the Retainer Agreement creates a reasonable inference that a $1,500 retainer refers to "subsequent services" beyond those identified in Paragraph (I) of the Agreement. Although one reading of these documents is that Attorney Cole received a total of $2,700 of which he apparently intended to

**6.** As discussed elsewhere in this decision, Local Rule 13–7 does not authorize postpetition payments via the method used in this case.

**7.** Procedural Form B 203, 11 U.S.C.A., calls for disclosure of compensation, in part, as follows:
(2) The compensation paid or agreed to be paid by the debtor(s) in this case.

(a) for legal services rendered or to be rendered in contemplation of and in connection with this case . . .
(b) prior to filing this statement, debtor(s) have paid . . .
(c) the unpaid balance due and payable is . . .

allocate $1,500 to the preconfirmation services, that is, the "retainer" referenced in the Rule 2016(b) Disclosure, and the remaining $1,200 for postconfirmation services, the more likely interpretation is that he received $1,500 prepetition and an additional $2,700 postpetition. Because the Rule 2016(b) Disclosure is not ambiguous, the Court adopts the latter interpretation. Thus it appears that in addition to the $2,700 paid-to Attorney Cole postpetition, he received $1,500 prepetition. Under either scenario, however, the postpetition receipt of money directly from the Debtors, and the source of those funds, which is critical to the analysis of whether receipt of the money violated the automatic stay imposed by section 362, should have been disclosed.

▮▮ The disclosure requirements are intended to provide information sufficient for any party to scrutinize the fees paid or to be paid. This review is especially important in chapter 7 and chapter 13 where a debtor does not need court approval to employ an attorney. Failure to comply with these requirements is a sufficient reason to deny compensation, *In re Saturley*, 131 B.R. 509, 517 (Bankr.D.Me.1991), but in this case the Court will make a reduction, rather than a total denial of fees. Counsel, however, are cautioned that the Court expects strict compliance with the disclosure requirements in the future.

## POSTPETITION PAYMENTS

▮ Although the Application indicates that Attorney Cole received $2,700 from the Debtors postpetition, it does not reveal the source of those funds. If they were prepetition earnings of the Debtor, as was the source of the $1,500 retainer according to the Rule 2016(b) Disclosure, they clearly were in the hands of the Debtors at the time of filing and became part of their bankruptcy estates. *See* 11 U.S.C. § 541. If the source was postpetition earnings of the Debtors, those funds similarly became part of the estates. *See* 11 U.S.C. § 1306(a)(2).[8] If the source was exempt property, the source and the payment, although not violating the automatic stay, still needed to be disclosed.

▮ Moreover the Official Local Form 3, which is part of the framework governing chapter 13 practice in this district, provides the form that all chapter 13 plans must take. Section III of that form contains the mechanism for payment of attorneys' fees which are to be paid postpetition. Unless the fees are being paid from assets that are not part of the bankruptcy estate, unpaid attorneys' fees, whether they are for pre or post confirmation services, and regardless of whether an application for their allowance is required, can only be paid during the bankruptcy via the chapter 13 plan.

## FEE PETITIONS IN CHAPTER 13

▮ In Massachusetts a chapter 13 debtor's attorney is not required to a file fee application if his fee is not challenged or he is not ordered to do so unless (i) the total amount the attorney received or is to receive for services rendered prior to confirmation aggregate to more than $2,500 or (ii) the total amount for all services ren-

---

8. Section 1306(a) provides:
 Property of the estate includes, in addition to the property specified in section 541 of this title-
 \* \* \* \* \* \*
 (2)earnings from services performed by the debtor after commencement of the case but

before the case is closed, dismissed or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.

dered after confirmation exceed $500. Once those limits are met, counsel must file a fee application to receive further compensation and the fee application is subject to the standard of reasonableness set forth in Bankruptcy Code section 330(a)(4)(B).[9] The fees awarded then become an administrative expenses pursuant to section 503(b) and paid under the chapter 13 plan as discussed above.

 Unlike cases under chapter 7 or 11, the standard of reasonableness in a case under chapter 13 or under chapter 12 is based upon "the benefit and necessity of such service to the debtor" as well as "other factors set forth" in section 330. 11 U.S.C. § 330(a)(4)(B). Therefore a Chapter 13 "debtor's counsel is entitled to an administrative expense for compensation for work that is beneficial and necessary to the debtor without proof of benefit or necessity to the Chapter 13 estate or the creditors." 3 KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY § 294.1 (3d ed.2000), citing *In re Famisaran,* 224 B.R. 886, 898 (Bankr.N.D.Ill.1998). Many courts have addressed the issue of whether the so-called lodestar analysis continues to be appropriate in chapter 13 cases, at least those filed after October 22, 1994 when section 330(a)(4)(B) became effective. *See, e.g., Chamberlain v. Kula (In re Kula),* 213 B.R. 729, 737 n. 5 (8th Cir. BAP 1997) and cases cited therein. The court in *In re Szymczak,* 246 B.R. 774, 779 (Bankr. D.N.J.2000), addressed this problem and adopted a practical solution it found had been approved by other courts.

As guidance for calculating legal fees, the Supreme Court concluded in *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." This approach is commonly known as the lodestar method....

The bankruptcy court in *In re Patronek,* 121 B.R. 728, 731–32 (Bankr. E.D.Pa.1990), concluded that the lodestar is, at bottom, a means of attempting to put a market rate on particular legal services in a lawsuit, and that a lodestar analysis is unnecessary and may in fact be misleading when a real market rate for certain routinized services exists and can be used directly as a means of measurement of the market rate. Simple use of the lodestar method for determining fees for debtors' attorneys in chapter 13 cases does not lead to an acceptable and reasonable outcome. In response to this predicament, bankruptcy courts have developed a method for measuring fees that combines an initial fixed fee standard for certain normal and customary work performed by debtors' counsel, with the traditional hourly fee method routinely used in other areas of the legal profession. This alternative approach adequately compensates attorneys for chapter 13 debtors, while adhering to the spirit and purpose of the Bankruptcy Code.

 This Court expressly adopts a standard that incorporates both the "initial fixed fee standard" for what can be described as the usual services inherent in any routine chapter 13 case and the lode-

9. Section 330(a)(4)(B) provides:
In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

star method for those services which exceed the routine tasks. In the instant case there is no document that clearly states what Attorney Cole charges as his initial fixed fee although it may be that his intent was to charge $1,500 for those services described in Paragraph (1) of the Retainer Agreement, namely the routine services of counseling the Debtors, preparing the schedules and statement of financial affairs, drafting the plan, and attending the section 341 meeting with them. This is certainly reasonable and the Court will allow this as a starting point. In addition, however, despite the problems with the full disclosure of compensation in this case, Attorney Cole performed services that clearly went beyond the routine and were of benefit to his clients. These services need to be reviewed under the lodestar analysis.

To find the reasonable and necessary amount of fees using the lodestar approach, the Court must determine the reasonable hourly rate and apply it to the time reasonably expended, and then perhaps adjust it by various factors. *Bank of New England,* 134 B.R. 450, 453 (Bankr.D.Mass.1991). The application must comport with the requirements for fee applications generally. That includes keeping contemporaneous time records that record time in tenths of hours.

In the instant case Attorney Cole stated that he charged the Debtors $150 per hour except for time spent in court which he billed at $200 per hour. He further represented that this arrangement is in accordance with the prepetition fee agreement. The Court finds that the hourly rates are reasonable. Attorney Cole's time-keeping methods, however, complicate the determination of whether the time actually spent is reasonable. On almost all occasions he billed his time in hourly increments and on those few occa-

sions when he varied from this practice, he recorded his time in half-hour increments.

Furthermore, some of the entries reflect that excessive time was spent on certain tasks. For example, Attorney Cole spent four (4) hours on the Motion to Employ a Real Estate Broker and her Affidavit. Similarly he spent two (2) hours to draft a two page motion to extend the time to continue the $250 plan payments for another six months. Other pleadings that were filed involved what appears to be excessive time in light of the substance and length of those pleadings. The Court is aware that some work necessary to prepare responses and other types of pleadings may not necessarily be reflected in the final documents in all instances and also recognizes that, in the instant case, the work performed by Attorney Cole in connection with the sale of the Debtors' lots was beneficial to them. The Court therefore will temper its reduction accordingly. But as stated previously, there needs to be some reduction because of the failure to comply with the disclosure requirement and because the receipt of the postpetition payments may very well have been taken in violation of the automatic stay. In the future, however, the Court will not be adverse to disallowing fees in their entirety to attorneys who fail to fulfill their disclosure obligations

CONCLUSION

For the foregoing reasons the Court awards total fees in the amount of $8,500, of which $4,200 has been paid.