**In re Filiae ELIAPO and Judy Eliapo, Debtors.**

**Law Offices of David A. Boone, Appellant,**

**v.**

**Devin Derham–Burk, Chapter 13 Trustee; United States Trustee, Appellees.**

**BAP No. NC–02–1450–MaRyB.**

**Bankruptcy No. 01–50227.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on June 18, 2003.

Filed Aug. 28, 2003.

David A. Boone, Law Offices of David A. Boone, San Jose, CA, for The Law Offices of David A. Boone.

Before MARLAR, RYAN, and BRANDT, Bankruptcy Judges.

### OPINION

MARLAR, Bankruptcy Judge.

### INTRODUCTION

The chapter 13[1] debtors' attorney opted for the standardized, "no look" fees,[2] and the bankruptcy court approved the requested fees in the amount of $2,350 in conjunction with plan confirmation. The attorney later filed a detailed application in which he sought $1,248 in additional attorney's fees for services in the chapter 13 case, and no party objected.

After an independent review, the bankruptcy court rendered its decision in which it utilized a two-step reasonableness analysis. First, it applied a "normal and customary" standard derived from the court's formal guidelines to determine whether there were any unusual or extraordinary circumstances in the case or whether the

---

1.  Unless otherwise indicated, chapter, section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

2.  The Northern District of California is among many districts throughout the country which have established, or are in the process of establishing, formal guidelines or local rules to allow presumptively reasonable and standardized attorneys' fees for consumer and business chapter 13 cases without requiring a detailed fee application, in the absence of an objection. *See generally*, Keith M. Lundin, *Chapter 13 Bankruptcy* § 294.1 (3d ed.2002). These are sometimes referred to by the bankruptcy bar and trustees as "no look" fees. *See, e.g., In re Wright*, 290 B.R. 145, 147 (Bankr.C.D.Cal.2003).

standard fee schedule for chapter 13 services was appropriate. Then, to those services which it determined were more than just routine, the bankruptcy court applied the lodestar approach (reasonable number of hours multiplied by a reasonable hourly rate) to determine the reasonableness of any additional fees. The bankruptcy court found that most of the services were routine and awarded only an additional $394.

In this appeal, the attorney seeks to recover the $854 difference. He contends that the bankruptcy court erroneously adhered to the court's compensation guidelines instead of applying the lodestar approach to determine the reasonableness of all of the requested fees.

We affirm, concluding that the bankruptcy court's dual-standard approach complied with § 330.

### FACTS

On January 22, 2001, debtors Filiae and Judy Eliapo ("Debtors") filed a chapter 13 petition. Their attorney was David A. Boone ("Boone").

The Bankruptcy Judges for the Northern District of California have adopted guidelines ("Guidelines") for compensating professionals and specifically chapter 13 debtors' attorneys.[3] In accordance with the "Guidelines for Payment of Attorney's Fees in Chapter 13 Cases," ("Ch. 13 Payment Guidelines"), Boone and Debtors signed and filed a form entitled "Rights and Responsibilities of Chapter 13 Debtors and their Attorneys" ("Rights and Responsibilities Form").

The Rights and Responsibilities Form incorporates the Ch. 13 Payment Guidelines maximum fees for services rendered by a chapter 13 debtor's attorney, in the following amounts:

$1,400 for the basic case; and an additional
$750 if the case involves real property claims;
$400 if the case involves state or federal tax claims;
$200 if the case involves vehicle loans or leases;
$1,200 if the case involves an operating business;
$300 if the case involves support arrears; and
$300 if the case involves student loans.

Rights and Responsibilities Form, at 2; Ch. 13 Payment Guidelines, ¶ A.2.

Fees approved in this fashion must then be paid through the chapter 13 plan or by the chapter 13 trustee, unless otherwise ordered by the court, and cannot be paid directly by the debtor, with the exception of the retainer. *See* Rights and Responsibilities Form, at 2.

### *Initial Attorney's Fees Request*

On June 21, 2001, in conjunction with the chapter 13 plan and the Rights and Responsibilities Form, Boone filed an "Application for Approval of Attorneys Fees" in the amount of $2,350. Boone indicated that this amount was the sum of the maximum amounts for services related to (1) the "basic case" ($1,400); (2) "Real property claims" ($750); and (3) "Vehicle loans or leases" ($200).

The application was one page long and did not include a detailed statement of the services rendered and the time spent. No objections were filed to Boone's fee request. The application was consistent with the Ch. 13 Payment Guidelines, under which an attorney in the Northern District of California has the option of obtaining a fee approval order up to the maximum amount for any routine services without filing a detailed fee statement. *See* Ch. 13 Payment Guidelines, at 1.

---

**3.** Local Rule 9029–1 provides that the judges "may adopt, and as needed revise, guidelines concerning the allowance and disallowance of professional fees and expense reimbursement and the contents and format of applications therefor filed pursuant to 11 U.S.C. §§ 330(a) and 331 and Fed. R. Bankr.P.2016(a) .... [The] guidelines are not intended to be local rules, and shall not have the force and effect thereof." N.D. Cal. L.B.R. 9029–1.

Boone met the three conditions for exercising this option:

a.  Counsel has filed and served the Chapter 13 Trustee with an executed copy of the "Rights and Responsibilities of Chapter 13 Debtors and Their Attorneys," . . . .

b.  Counsel has accepted no more than $500 as a retainer in the case, unless counsel thereafter applies for and receives court approval of a larger advance retainer;[4] and

c.  No objection to the requested fees has been raised.

Ch. 13 Payment Guidelines, ¶ A.1.

On June 21, 2001, Debtors' chapter 13 plan was confirmed, which included approval of Boone's fee application for $2,350.[5]

### The Final Fee Application

The Rights and Responsibilities Form provides that additional fees, in excess of those approved at the time of plan confirmation, may be obtained "[i]f the initial fees ordered by the court are not sufficient to compensate the attorney for the legal services rendered in the case, [and] the attorney [applies] to the court for any additional fees." Rights and Responsibilities Form, ¶ 9.

In that event, the attorney must comply with Bankruptcy Rules 2002 (notice) and 2016 (detailed statement and disclosures),

as well as the "Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees" under § 330 ("General Compensation Guidelines"). *See* Ch. 13 Payment Guidelines, ¶ A.5.

Paragraph 9 of the General Compensation Guidelines allows a chapter 13 debtor's attorney, who has filed the Rights and Responsibilities Form, to utilize "the approved Chapter 13 form application when seeking compensation in excess of that approved at the time of confirmation." *See* Chapter 13 Final Application for Compensation; General Compensation Guidelines, ¶ 9.

Pursuant to the Guidelines, on February 27, 2002, Boone filed a "Chapter 13 Application for Compensation" ("Final Application")[6], which covered legal services provided during the entire case from January 18, 2001 through February 26, 2002. Boone requested attorney's fees in the amount of $3,598 for 15.30 hours' work at hourly rates of $220 to $250. This amount was $1,248 more than the $2,350 that had already been awarded, and included a request for $125 for the preparation of the Final Application.

Proper notice was given and the matter was set for hearing. However, when no objections were filed, the bankruptcy court took the matter under submission.

Six months later, on August 6, 2002, the bankruptcy court entered an order ("Or-

---

**4.** Boone and Debtors had executed a fee agreement which provided for a $165 retainer.

**5.** Boone's request for the $200 fee for services involving "vehicle loans or leases" was approved in the initial order awarding the $2,350. However, in his subsequently-filed final fee application, Boone listed only one entry related to Debtors' vehicle—a telephone conversation with the lender—for which he did not submit a charge. The bankruptcy court, in reviewing the final application, not-

ed that there were no problems with the vehicle, and thus did not include the $200 fee in its calculation. That determination has not been challenged on appeal.

**6.** The Final Application substantially conformed to the official format for final compensation in a chapter 13 case, and included a declaration, certification of compliance, hourly rates, and a detailed statement of services. *See generally,* General Compensation Guidelines, ¶ 9.

der") incorporating the court's findings and conclusions, which granted only $394 additional fees instead of the $1,248 requested, a difference of $854.

In determining the reasonableness of Boone's services, the bankruptcy court divided the services into two segments. The first component involved "normal," basic case services ("Basic Services"), such as "preparation of the petition, schedules and statement of affairs and the moving of the case to confirmation." Order (Aug. 6, 2002), at 2. Although Boone had requested $2,254 for 9.6 hours for the Basic Services, the court determined that there were "[n]o extraordinary circumstances" associated therewith and, thus, determined that reasonable compensation should be the $1,400 maximum fee as set forth in the Ch. 13 Payment Guidelines. *Id.*

The court then looked at Boone's requested $1,219 for 5.2 hours' work on the stay relief motions related to Debtors' first and second mortgages ("Stay Relief Services"). While noting that the $750 presumptive amount was normally sufficient, it nonetheless accepted Boone's time and rate representations, "given the debtors['] problems with their mortgage payments," and awarded Boone the full amount of the requested $1,219 for this work. *See* Order (Aug. 6, 2002), at 3.

Apparently, the court then added $125 for Boone's preparation of the fee application, resulting in a total award of $2,744 ($1,400 + $1,219 + $125 = $2,744). The award was $394 greater than the original $2,350 fee award ($2,744—$2,350 = $394), but $854 less than what Boone had requested in the Final Application. Boone timely appealed the Order.

## ISSUES[7]

1. Whether the use of presumptive maximum attorneys' fees for legal services provided in a chapter 13 case violates § 330.

2. Whether the bankruptcy court erroneously applied a "normal and customary" standard to determine the reasonableness of the attorney's fees requested in Boone's Final Application rather than using the lodestar formula.

3. Whether the bankruptcy court abused its discretion in reducing the fee request by $854 because it (1) decided the unopposed Final Application without a hearing and (2) took six months to render its decision.

## STANDARD OF REVIEW

■ The bankruptcy court's award of attorneys' fees will not be disturbed on appeal absent an abuse of discretion or an erroneous application of law. *Smith v. Hale (In re Smith)*, 317 F.3d 918, 923 (9th Cir.2002), *cert. denied sub nom. Smith v. Grimmett*, —— U.S. ——, 123 S.Ct. 2074, 155 L.Ed.2d 1060 (2003).

■ We decide, *de novo*, whether the bankruptcy court applied the correct legal standard. *See Siegel v. Federal Home Loan Mortg. Corp.*, 143 F.3d 525, 528 (9th Cir.1998). Whether a particular procedure comports with due process is also a legal question that we review *de novo. Garner v. Shier (In re Garner)*, 246 B.R. 617, 619 (9th Cir. BAP 2000).

■ Under the abuse of discretion standard, we will not reverse unless we are "definitely and firmly convinced that the bankruptcy court committed a clear error

---

7. Boone has listed 13 issues in the Statement of Issues section of his opening brief. Some are duplicative, and all are adequately addressed in the discussion of these three restated issues.

of judgment." *Warrick v. Birdsell (In re Warrick)*, 278 B.R. 182, 184 (9th Cir. BAP 2002).

## DISCUSSION

### A. Standardized Fees

■ Chapter 13 debtors' attorneys are entitled to an administrative expense priority and full payment for their reasonable attorneys' fees. *See* 11 U.S.C. §§ 330(a); 503(b)(2); 507(a)(1); 1322(a)(2). In a chapter 13 case, the standard of reasonableness is based upon "the benefit and necessity of such service to the debtor" as well as "other factors" that are set forth in § 330. Section 330(a)(4)(B) provides:

> In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

11 U.S.C. § 330(a)(4)(B).

Section 330(a) generally provides that, after notice and a hearing, the court may award to a professional person employed with court approval[8] "reasonable compensation for actual, necessary services rendered ... and ... reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1). In determining "the nature, the extent and the value" of the services, a court considers the following factors:[9]

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

A customary review of a fee application under § 330 starts with a determination of the "lodestar," by multiplying a reasonable number of hours expended by a reasonable hourly rate. *See Unsecured Creditors' Comm. v. Puget Sound Plywood, Inc.*, 924 F.2d 955, 960 (9th Cir.1991). The lodestar formula is a means of putting a market rate on particular legal services rendered in a case. *See Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Yermakov*, 718 F.2d at 1471.

■ Although the lodestar method presents the "primary" and "customary" approach, it is not the exclusive method for calculating reasonable fees under § 330, and § 330 does not mandate its use. *See Puget Sound Plywood*, 924 F.2d at 960–61 (holding that the bankruptcy court did not abuse its discretion by using an alternative fee formula).

---

**8.** The requirement for prior court approval of employment does not apply to a chapter 13 debtor's attorney. *See* 11 U.S.C. § 327; 3 *Collier on Bankruptcy* ¶ 327.07 (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev. 2003).

**9.** These factors are a codification of the criteria enunciated in *Johnson v. Ga. Hwy. Exp., Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974), and adopted by the Ninth Circuit. *See Yermakov v. Fitzsimmons (In re Yermakov)*, 718 F.2d 1465, 1471 (9th Cir.1983).

In chapter 13 cases, the lodestar approach may not adequately measure the reasonableness of many routine tasks performed by attorneys. Instead, a "normal and customary" standard reflects that "a real market rate for certain routinized services exists and can be used directly . . . ." *See In re Szymczak,* 246 B.R. 774, 779 (Bankr.D.N.J.2000) (adopting "normal and customary" standard for routine chapter 13 services) (citing *In re Patronek,* 121 B.R. 728, 732 (Bankr.E.D.Pa.1990) (concluding "that the handling of a Chapter 13 bankruptcy case is the paradigm of a repetitious sort of legal task, the value of which can be directly valued by review of the marketplace")).

Thus, the lodestar approach may not fairly compensate the efficient chapter 13 practitioner, who accomplishes more routine tasks and services more clients through the use of computerized procedures and paralegal staff; or it may reward an inefficient practitioner with higher fees. *See generally* 4 Lundin, *supra,* at 294–17.

Furthermore, the sheer volume of chapter 13 cases and the rarity of creditor or debtor objections to attorneys' fees in such cases make court review of each fee application or fee arrangement administratively burdensome.

Therefore, for several years, bankruptcy courts throughout the nation have both experimented with and implemented a fee award approach aimed at standardizing and streamlining the compensation for routine chapter 13 legal services, while, at the same time, ensuring that any such compensation is fair and reasonable. The effort began with fee guidelines issued by the Executive Office of the United States Trustee, effective May 1, 1995.[10]

The courts, which had always exercised wide discretion in determining reasonable and necessary fees under § 330(a), next sought to develop uniform fees for standard procedures, through local rules, general orders, or informal recommendations by the chapter 13 trustee. *See, e.g., In re Kindhart,* 167 F.3d 1158, 1159–60 (7th Cir. 1999) (accepting a uniform presumptive base fee limit of $1,000 for the Central District of Illinois Bankruptcy Court, which is reviewable every two years); *Bueno v. United States Bankruptcy Court (In re Bueno),* 248 B.R. 581, 583 (D.Colo. 2000) (a bankruptcy judge is not forbidden from formulating "presumptively normal billing rates or normal expectations of the time necessary to complete discrete tasks"); *George T. Carlson & Assocs. v. United States Bankruptcy Court (In re Ingersoll),* 238 B.R. 202, 209 (D.Colo.1999) (directing bankruptcy judges to work with members of bankruptcy bar, United States trustee and chapter 13 trustee to adopt a uniform practice for reviewing fee applications); *Bachman v. Laughlin (In re McKeeman),* 236 B.R. 667, 669–70 (8th Cir. BAP 1999) (holding it was not arbitrary for a court to consider amounts charged in a "typical" chapter 13 case); *In re Pappas & Rose, P.C.,* 229 B.R. 815, 817–20 (W.D.Okla.1998) (guidelines for payment of attorneys' fees are not contrary to law); *In re Pedersen,* 229 B.R. 445, 448 (Bankr.E.D.Cal.1999) (optional chapter 13 fee guidelines, provided by general order, "are nothing more than a presumption that compensation is reasonable if paid in the amounts and in the manner prescribed").

**10.** The Bankruptcy Reform Act of 1994 directed the Executive Office of the United States Trustee to promulgate "procedural guidelines" to be "applied uniformly" by United States trustees in reviewing fee applications under § 330. *See* 28 U.S.C. § 586(a)(3)(A), *as amended by* Bankruptcy Reform Act of 1994, Pub.L. 103–394, § 224(a), 108 Stat. 4106 (1994).

In the context of the Northern District's guidelines for compensation of bankruptcy petition preparers—whether attorneys or lay persons—we have held that, under § 329(b),[11] a bankruptcy court has the "power to establish a presumptive 'reasonable value' of legal fees in consumer bankruptcies and to limit fees to a certain level unless counsel establishes that services in a particular case can justify more." *Hastings v. United States Trustee (In re Agyekum)*, 225 B.R. 695, 699 (9th Cir. BAP 1998).

The procedure utilized in the Northern District of California is not contrary to § 330's mandate to award reasonable fees as long as the assigned values are the result of a direct review of the marketplace.[12] *See Steinacher v. Rojas (In re Steinacher)*, 283 B.R. 768, 772 (9th Cir. BAP 2002) (local rules may not "enlarge, abridge, or modify any substantive right").

Ultimately, the bankruptcy court must determine if the price charged for a specific legal service is reasonable under all of the circumstances. A court is not obligated to blindly accept either the rate an attorney charges, or the number of hours actually spent on routine tasks.

### B. Additional Fee Request

Boone does not dispute that the Ch. 13 Payment Guidelines create a pre-sumption of reasonableness for the "no look" attorney's fees that he had been awarded thereunder. *See* Appellant's Opening Brief (Jan. 12, 2003), at 8. Rather, he contends that when he submitted the formal Final Application for additional fees, including a fee statement for services rendered in the entire chapter 13 case, the Ch. 13 Payment Guidelines became "irrelevant" and the bankruptcy court was required to perform a traditional § 330 lodestar calculation to determine the reasonableness of the new fee application. *Id.* Thus, Boone contends that the court's use of the Ch. 13 Payment Guidelines as a touchstone for reasonableness was arbitrary and capricious.

We presume that Boone does not challenge the bankruptcy court's award of his entire requested fees for the Stay Relief Services in the amount of $1,219. Finding that extraordinary circumstances possibly existed as to the Stay Relief Services,[13] the bankruptcy court reviewed those fees for reasonableness by using the lodestar method. The bankruptcy court stated that it would not "second guess" the time Boone listed (nor the hourly rate charged) for that work. Thus, the court determined that the $1,219 requested by Boone for the Stay Relief Services was reasonable.

The bankruptcy court's application of the lodestar was abbreviated, however, be-

---

**11.** Section 329(b) permits the court to deny compensation or cancel a fee agreement if it is unreasonable. The court, on its own initiative, may review for reasonableness any agreement for compensation between the debtor and his or her attorney, pursuant to § 329. *See also* Fed. R. Bankr.P.2017(b). "Section 330 sets out the standard by which courts should determine the reasonableness of fees under § 329." *Am. Law Center PC v. Stanley (In re Jastrem)*, 253 F.3d 438, 443 (9th Cir.2001). Under these provisions, the bankruptcy court may order the return of any attorneys' fees that exceed the reasonable value of the services provided. *Id.*

**12.** We note that, in the Northern District of California, the bankruptcy court receives regular input from the bankruptcy bar, which may include discussion of the presumptive amounts. *See* Gen. Order 15 (Dec. 5, 1995) (establishing a Committee of Lawyer Representatives, including the chapter 13 trustee and the United States trustee, who meet with the judges and clerk of court).

**13.** We have not been asked to, nor do we *sua sponte*, review the court's implicit finding that the Stay Relief Services involved unusual or extraordinary circumstances.

cause the court did not make express findings that Boone's hourly rates were reasonable or that the time expended was reasonable, nor did it discuss the § 330(a)(3) or *Johnson* factors. *See McKeeman*, 236 B.R. at 669–70. Nevertheless, there are no existing or asserted grounds for overturning the decision to award Boone the full $1,219 requested for the Stay Relief Services, and therefore we will not "second-guess" that award.[14]

Boone's appeal necessarily focuses on the bankruptcy court's analysis of the fees for the remaining Basic Services. The bankruptcy court applied a two-step analysis to these additional fees. First, it looked at the nature of the services in order to determine if there were any extraordinary circumstances, or if they were merely normal and customary.

The bankruptcy court found that Boone had requested a total of $2,254 for 9.6 hours' work for Basic Services,[15] and that "no extraordinary circumstances" were evident. Order (Aug. 6, 2002), at 2. Nor did Boone contend that his Basic Services

were unusual or extraordinary. Therefore, the court applied the $1,400 maximum fee provided in the Ch. 13 Payment Guidelines. That amount was $854 less than Boone's requested fees.

■ Boone contends that the court applied a nonexistent "extraordinary circumstances" standard. It did not. To the contrary, it applied the "normal and customary" standard to an otherwise unremarkable chapter 13 case. As we discussed above, such a standard complies with § 330(a). Moreover, "reasonableness," in a traditional sense, is determined by looking at the "nature, extent, and value of the services provided," such that "[a]bsent extraordinary circumstances, an attorney must scale his or her fee at least to the reasonably expected recovery." 3 *Collier on Bankruptcy, supra*, at ¶ 330.04[2] (quoting *Puget Sound Plywood*, 924 F.2d at 961). The bankruptcy court's approach was fair, practical, and justified by the pure ordinariness of the case.

---

14. As a practical matter, there is no appellee because there were no objections to the application and no appellee appeared. The court's findings and conclusions thus serve the function of the appellee's brief.

We do note, however, that it would have been of great assistance to the bankruptcy court and the panel to have had the input of either the United States trustee or the Chapter 13 trustee.

15. Although the Ch. 13 Payment Guidelines provide a presumptive fee "for the basic case" in the amount of $1,400, they do not explain what services are covered by this fee. *See* Ch. 13 Payment Guidelines, ¶ A.2. Apparently, these Basic Services are described in the Rights and Responsibilities Form, and include the following:

1. Appear at the 341 Meeting of Creditors with the debtor.
2. Respond to objections to plan confirmation, and where necessary, prepare an amended plan.

3. Prepare, file, and serve necessary modifications to the plan which may include suspending, lowering, or increasing plan payments.
4. Prepare, file, and serve necessary amended statements and schedules, in accordance with information provided by the debtor.
5. Prepare, file, and serve necessary motions to buy, sell, or refinance real property when appropriate.
6. Object to improper or invalid claims, if necessary, based upon documentation provided by the debtor.
7. Represent the debtor in motions for relief from stay.
8. Where appropriate, prepare, file, and serve necessary motions to avoid liens on real or personal property.
9. Provide such other legal services as are necessary for the administration of the present case before the Bankruptcy Court.

Rights and Responsibilities Form, at 2.

■ As discussed above, the lodestar method is not the exclusive method of determining the reasonableness of fees in a chapter 13 case. Boone has the burden of proving the reasonableness of his fees. *See Dalessio v. Pauchon (In re Dalessio)*, 74 B.R. 721, 724 (9th Cir. BAP 1987). The case authorities that Boone has cited for the exclusive application of the lodestar method (1) are outdated (pre–1994) and, therefore, do not take into account the Congressional mandate for standardized compensation proceedings; (2) are in the minority; or (3) merely discuss the general application of the lodestar approach, which is not in dispute.

In particular, the Sixth Circuit appears to stand alone in holding that presumptive fee awards are arbitrary and capricious. *See Boddy v. United States Bankruptcy Court (In re Boddy)*, 950 F.2d 334, 337–38 (6th Cir.1991) ("normal and customary" standard applied by the bankruptcy court to determine the fee award was contrary to §§ 329 and 330, which require, at a minimum, the express calculation of the lodestar amount when determining a reasonable attorney's fee).

The Sixth Circuit's approach has been roundly criticized for placing the lodestar approach above all others in chapter 13 cases, for it is only one means of determining reasonableness. *See Puget Sound Plywood*, 924 F.2d at 960; *In re Busy Beaver Bldg. Ctrs.*, 19 F.3d 833, 856 (3d Cir.1994). *See also Chamberlain v. Kula (In re Kula)*, 213 B.R. 729, 737 n. 5 (8th Cir. BAP 1997) (stating, in *dicta*, that the lodestar calculation is not required in chapter 13 cases, however, the court should make a finding that such calculation is inappropriate under the circumstances); *In re Argento*, 282 B.R. 108, 116–17 (Bankr.D.Mass.2002) (adopting "a standard that incorporates both the 'initial fixed fee standard' for what can be de-

scribed as the usual services inherent in any routine chapter 13 case and the lodestar method for those services which exceed the routine tasks"); *Szymczak*, 246 B.R. at 779–80; *In re Watkins*, 189 B.R. 823, 828 (Bankr.N.D.Ala.1995) (courts may allow initial fee based on "normal and customary" standard). The Third Circuit sums up the majority view:

> While bankruptcy fees are commonly calculated using the lodestar method, we note in closing that, contrary to the apparent view of the Sixth Circuit Court of Appeals, *see In re Boddy*, 950 F.2d 334, 337 (6th Cir.1991), § 330 by no means ossifies the lodestar approach as the point of departure in fee determinations. We refer to it here because the product of an hourly rate [multiplied] by the number of hours worked to this day remains the overwhelmingly prevailing billing method within the market for most legal services. But with the rise of competitive pressures and the ceaseless evolution of the legal community, we may expect to witness law practitioners adapt to the changed circumstances by developing alternative billing practices and methods. The strength of the market approach Congress embraced with § 330 is that these developments, including regional variations, will automatically percolate up through bankruptcy fee allotments. While § 330 is not an engine for implementing innovative billing strategies, it will readily accommodate alternative practices once comfortably established in the realm of comparable non-bankruptcy legal services.

*Busy Beaver Bldg. Ctrs.*, 19 F.3d at 856 (footnote omitted).

Next, Boone contends that the Ch. 13 Payment Guidelines became irrelevant after he filed the Final Application. We disagree. Boone initially voluntarily elected to participate in the "no look" fee proce-

dure by filing a Rights and Responsibilities Form, and by seeking and obtaining the fees allowed in the Ch. 13 Payment Guidelines upon plan confirmation.

By the time Boone filed his Final Application, his original award of $2,350 had already been routinely approved for distribution through the plan. While the Guidelines provide a means for an attorney to choose the more cumbersome application procedure, *see* Ch. 13 Payment Guidelines, ¶ A.4, Boone opted for the streamlined method which assured prompt payment of his fees. This timing distinction for payment under each option is important, in order to preserve the bankruptcy court's control over the estate's assets. *See Pedersen*, 229 B.R. at 447 (quoting similar Eastern District guidelines, which state that the Bankruptcy Code and Rules and the guidelines require, for conventional applications, " 'at a minimum, that payments on account of postpetition services be held in trust until the court approves the fees and expenses of the attorney' ").

Boone filed the Final Application in compliance with the Guidelines' official format for applying for compensation in excess of the "no look" amount. Boone requested, in his Final Application, additional fees for all his services, some of which had already been compensated. Therefore he opened his entire legal services "package" to judicial scrutiny.

The Guidelines do not state how an application for additional fees will be reviewed. They merely provide that if the initial fees ordered by the court are insufficient, then the attorney may apply for any additional fees and must comply with Bankruptcy Rules 2002 and 2016 as well as the General Compensation Guidelines. *See* Ch. 13 Payment Guidelines, ¶ A.5. Thus, the attorney "must attach contemporaneous time records and demonstrate that the fee allowed by the chapter 13 fee

guidelines was not sufficient in view of the amount or complexity of the work undertaken for the debtor." *Pedersen*, 229 B.R. at 448 (discussing "nearly identical" guidelines used in the Eastern District of California).

The bankruptcy court's dual-standard approach for determining the reasonableness of Boone's additional fee request has been tried and approved by other bankruptcy courts. In *Argento*, the Massachusetts bankruptcy court allowed a presumptive fixed fee of $2,500 for routine chapter 13 work, but then the debtor's attorney filed a fee application for more than $12,000. *Argento*, 282 B.R. at 110, 115. The court examined the procedure in other courts, and decided to adopt "a standard that incorporates both the 'initial fixed fee standard' for what can be described as the usual services inherent in any routine chapter 13 case and the lodestar method for those services which exceed the routine tasks." *Id.* at 116–17. The attorney was then awarded $8,500. *Id.* at 117.

In *Szymczak*, the New Jersey bankruptcy court awarded a fixed fee for normal and customary services, and applied the lodestar calculation to services that it determined were beyond normal and customary. *Szymczak*, 246 B.R. at 781–82. The latter work included "such matters as the defense of a motion to lift the automatic stay, objections to claims, cramdown of undersecured mortgages, and settlement of objections to confirmation." *Id.* at 782.

In *Watkins*, the chapter 13 debtor's attorney was awarded a fee based on a normal and customary formula adopted by the court. *Watkins*, 189 B.R. at 826. The attorney then requested an additional $900 in a detailed fee application. In reviewing the application, the *Watkins* court decided that it was necessary to depart from the lodestar method and determine "not only whether the services performed [were] ac-

tual and necessary, but whether there [were] also either services required in addition to those for which compensation [had] already been awarded or were services that were anticipated but which required a significantly greater amount of time, effort and expense than anticipated." *Id.* at 826–27.

Therefore, the *Watkins* court determined that "if a request for additional fees is made, ... the 'normal and customary' standard should be applied first and if the court finds that the case, or work in it, falls outside of that standard, then the lodestar method should be applied to calculate whatever additional fees are appropriate." *Id.* at 828. The work falling outside the "normal and customary" was appropriately characterized as "extraordinary."[16] *Id.* at 833.

■ In summary, Boone opted for the streamlined procedure and then sought additional fees in compliance with the Ch. 13 Payment Guidelines. The bankruptcy court's conclusion that, because there were no extraordinary circumstances involved in Boone's Basic Services, the reasonable fees for that work were limited to the $1,400 amount provided in the Ch. 13 Payment Guidelines was not an abuse of discretion. In other words, absent express provisions to the contrary, a bankruptcy court that operates under its guidelines for compensation in chapter 13 cases does not err by

reviewing a fee application for additional compensation, first, to determine whether the routine services were normal and customary, and therefore compensable at the presumptive fee rate, and second, if any services were extraordinary or unusual, by applying the lodestar analysis to determine the reasonableness of those fees.[17]

### C. Other Alleged Abuses of Discretion

■ Boone has raised other issues related to the bankruptcy court's procedure. He maintains that he was deprived of due process when the court took the Final Application hearing off calendar and then delayed ruling for six months.

■ "Due process only requires a meaningful hearing appropriate to the nature of the case." *City Equities Anaheim, Ltd. v. Lincoln Plaza Dev. Co. (In re City Equities Anaheim, Ltd.)*, 22 F.3d 954, 959 (9th Cir.1994) (citation omitted). *See also* 11 U.S.C. § 102(1) ("'after notice and a hearing' ... means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances").

In this case, there were no objections to the Final Application, and the bankruptcy court took all of Boone's papers under review. This procedure was consistent with its obligations to conduct an indepen-

---

**16.** Boone has not disputed the bankruptcy court's characterization of the services rendered. What is "normal and customary" should be determined on a case-by-case basis, since the fee for representing a debtor in a chapter 13 case is considered in its totality, in light of the context of a particular case and the needs of a particular debtor. As the court said in *Watkins*: "There is some point between pitching in a game and pitching a perfect game that elevates the normal and customary to the extraordinary." *Watkins*, 189 B.R. at 833. In this regard, the *Watkins* court found that motions filed by a substitut-

ed-in attorney were outside the scope of the initial fee award. *Id.* at 834.

**17.** We leave for another day the issue of whether the bankruptcy court can apply the "normal and customary" approach to a conventional fee application filed in the first instance. *See Pedersen*, 229 B.R. at 449 (stating that filing a detailed fee application, with time records and descriptions of services, is the only way to obtain court approval of attorneys' fees *outside* of the chapter 13 fee guidelines).

dent review under § 330. It is well-established law that the bankruptcy court has a duty, under § 330, to review fee applications notwithstanding the absence of objections by the trustee, debtor, or creditors. *Lobel & Opera v. United States Trustee (In re Auto Parts Club, Inc.)*, 211 B.R. 29, 33 (9th Cir. BAP 1997) (citing *Busy Beaver Bldg. Ctrs.*, 19 F.3d at 841).[18]

Moreover, the local rules only require a hearing when the compensation exceeds $500, and the bankruptcy court limited the additional compensation to $394; that rule also authorizes the court to dispense with a hearing. *See* N.D. Cal. L.B.R. 9014–1(b)(1)(B).

Boone, nonetheless, contends that the bankruptcy court was placed in an adversary role against which he could not present oral argument to support his fees. Boone's citation to *Ingersoll*, a Colorado district court case, is inapposite. There, the district court held that the bankruptcy judge's "check-box" objections to the attorney's fee application did not satisfy the notice and hearing requirements for fee applications because the attorney had no opportunity to address the factual issues involved. *Id.*, 238 B.R. at 204–05.

In contrast, Boone has only assigned error to the court's application of the legal standards for review, which resulted in a reduced fee. Nor has Boone shown how the lack of an actual hearing was prejudicial to him. *See Resolution Trust Corp. v. Rice (In re Consol. Pinnacle West Secs. Litig./Resolution Trust Corp.–Merabank Litig.)*, 51 F.3d 194, 197 (9th Cir.1995).

■■■ Neither has Boone established any prejudice due to the court's delay in rendering its decision. The Ninth Circuit has clearly held that there is no right to a fee enhancement because of a delay in

payment. *Malpass v. Rodgers (In re Music Merchants, Inc.)*, 208 B.R. 944, 947 (9th Cir. BAP 1997) (stating there is "no authority for the proposition that awarded fees *must* be adjusted for delay in payment") (emphasis in original). Moreover, an administrative expense claim for these attorney's fees is not entitled to postpetition interest until the court actually awards the fees. *See Boldt v. Crake (In re Riverside–Linden Inv. Co.)*, 945 F.2d 320, 324 (9th Cir.1991); *see also* 11 U.S.C. § 1322(a)(2); § 502(b)(2); 3 *Collier on Bankruptcy, supra*, ¶ 330.03[3].

■■■ A bankruptcy court has wide discretion to manage its docket. *Lewis v. Tel. Employees Credit Union*, 87 F.3d 1537, 1557 (9th Cir.1996). The posture of the chapter 13 case, or the novelty of the issues raised by Boone's Final Application, may have required greater scrutiny by the bankruptcy court. When the bankruptcy court conducts a third-party review of a fee application, it must proceed cautiously.

We conclude, therefore, that the bankruptcy court did not abuse its discretion or deny Boone due process in its review procedure.

### CONCLUSION

The court's review was fair, practical, and complied with § 330(a) for approving compensation of attorneys' fees in a chapter 13 case. The court properly exercised its discretion in utilizing its procedures, which afforded Boone due process. Therefore, the Order awarding Boone additional fees of $394 is **AFFIRMED**.

RYAN, Bankruptcy Judge, concurring.

While I agree with the outcome of the opinion, I write separately because I believe the Ch. 13 Payment Guidelines (the

---

**18.** Boone also argued that the court abused its discretion in not granting an unopposed fee application. This argument is without merit.

"Guidelines") are self-defeating, ambiguous, and need modification.

It appears that, under the current practice in the Northern District of California, the Guidelines are not binding on the attorneys. In other words, an attorney can opt for the "no look" fees, get paid the fees, and later seek a full § 330 review on application should the attorney believe that additional fees are warranted on the very same services that he sought and received payment for under the Guidelines.[19]

The Guidelines are designed to provide an efficient method for disbursing fees to chapter 13 attorneys without further detailed fee application or hearing. Various courts have approved fixed fees for certain categories of services. *See, e.g., In re Finlasen,* 250 B.R. 446, 449 (Bankr. S.D.Fla.2000) (referring to Local Rule 2016–1(B)(2) and the "Chapter 13 Fee Guidelines"); *In re Pedersen,* 229 B.R. 445 (Bankr.E.D.Cal.1999). Ideally, the system advances the interest of judicial economy by avoiding a detailed review of fee applications under § 330. This purpose, however, is not achieved if the attorneys are allowed to later request a § 330 review after opting for the fixed fees. Such a system is self-defeating because there is no real choice being made. Attorneys will likely first choose to accept the "no look" fees and later file a fee application if dissatisfied with the fixed fees previously received.

Here, the Guidelines allow "maximum initial fees" of $1,400 for basic services. However, the Guidelines do not indicate what tasks are to be covered under the basic services. The same problem exists in determining whether fixed fees are appropriate in the other categories. The Guidelines do not prevent attorneys from seeking a later § 330 review to obtain additional fees even though the attorney has been previously paid under the Guidelines. In any event, this appears to be the practice. Arguably, the Guidelines are ambiguous on this point: "If counsel elects to be paid other than pursuant to these Guidelines, all fees including the retainer shall be approved by the court ...." Guidelines for Payments of Attorney Fee in Chapter 13 Cases, at 2.

Therefore, given the ambiguity and lack of specificity of the Guidelines, I would defer to the court's § 330 review, which is given great deference. *See Gill v. Wittenburg (In re Fin. Corp. of America),* 114 B.R. 221, 224 (9th Cir. BAP 1990). Here, the bankruptcy court divided the work performed by Boone into two categories: basic services and real property claims.[20] Boone also requested $125 for the preparation of the fee application. Finding that the $1,400 provided under the Guidelines was sufficient to cover the basic services, the court declined to award Boone any

---

19. This was explained to us by Boone during oral argument. This is apparently understood to be the practice because Judge Grube reviewed all the services performed by Boone under § 330. Boone explained that he wanted clarification regarding the practice because he did not believe that Judge Grube properly complied with § 330 as to all the services that he performed. He also explained *that he has a number of pending applications for fees presenting the very same issue regarding the application of the Guidelines and the adequacy of the § 330 review.*

20. Boone requested $2,254 for basic services, which include "compensation for initial meeting with Debtors and preparing petition, schedules, matrix and Chapter 13 Plan." Chapter 13 Application for Compensation (Feb. 27, 2002), at 2. Further, Boone represented Debtors in two separate motions for relief from stay and requested $1,129 for services related to the real property claims.

additional fees in this category. However, the court awarded the $1,219 without "second guessing" the time invested by Boone in the stay motions. Apparently, the court also awarded the $125 to Boone for filing the fee application. Although the court did not make detailed findings regarding its fee awards under § 330, I agree with the majority that the court satisfied § 330 and would affirm the bankruptcy court.

The majority cited numerous cases to support the position that the court can conduct a § 330 review after a chapter 13 attorney has opted for the "no look" fees. However, those cases do not support the application of the Guidelines as understood by Boone and Judge Grube.

For example, in *In re Argento*, 282 B.R. 108 (Bankr.D.Mass.2002), the attorney filed a fee application for $12,837.50. In the application, the attorney disclosed that $1,500 was paid prepetition as a retainer. The *Argento* court allowed the $1,500 because the attorney intended it to cover the routine services. *Id.* at 117. As to the remaining requested fees, the *Argento* court held that the attorney performed services "that clearly went beyond the routine and were of benefit to his clients." *Id.* Therefore, the *Argento* court reviewed the remaining fees under the lodestar approach. Because the attorney in *Argento* did not opt for "no look" fees, *Argento* is distinguishable.

Similarly, *In re Szymczak*, 246 B.R. 774 (Bankr.D.N.J.2000), involved a different factual scenario. There, the attorney filed a fee application seeking an allowance of fees in the amount of $9,691.25.[21] The

court issued an order awarding only $2,250. The attorney filed a reconsideration motion, which was granted by the court. It subsequently revised the allowance of fees to $3,350. Specifically, the *Szymczak* court awarded the $1,500 for normal and customary chapter 13 services, and applied the lodestar analysis to extraordinary work performed. *Id.* at 781–82. Therefore, like *Argento*, *Szymczak* is distinguishable because it did not involve a situation where the attorney opted for "no-look" fees and later sought additional fees under § 330.

Finally, in *In re Watkins*, 189 B.R. 823 (Bankr.N.D.Ala.1995), the second attorney filed a fee application for additional fees after the debtor's chapter 13 case was reinstated.[22] In determining whether the new attorney was entitled to additional fees, the *Watkins* court first applied the normal and customary standard. *Id.* at 832. Finding that the attorney's late retention in the case resulted in extraordinary work, the *Watkins* court applied the lodestar analysis and granted the requested fees in part. *Id.* at 835. Again, *Watkins* is distinguishable because it did not involve an attorney who opted for "no look" fees and later sought a § 330 review.

In sum, I believe the Guidelines should be modified for the reasons previously mentioned. To achieve the objective of judicial economy and to follow the application of "no-look" fees as approved in other cases, attorneys should be required to decide to accept either the fixed fees under the Guidelines or file a fee application

---

**21.** The local bankruptcy rules for the District of New Jersey requires an attorney to file a detailed fee application for review if the attorney's fee request exceeded $1,500. *See Szymczak*, 246 B.R. at 777 n. 1.

**22.** In *Watkins*, the debtors were represented by another attorney when their case was ini-

tially filed. The debtors' case was dismissed because they failed to make their monthly plan payments. Prior to the dismissal, the bankruptcy court awarded $550 to the first attorney. Of that amount, $488.12 was paid to the new attorney after the case was reinstated. *See Watkins*, 189 B.R. at 826.

subject to a § 330 review. Attorneys who opt for "no look" fees should not be entitled to additional fees for the same services that are covered by, awarded under, and paid pursuant to the Guidelines. This certainly does not prevent attorneys from obtaining additional fees for services beyond the scope of the basic services covered by the "no-look" provisions of the Guidelines. However, in order for attorneys to make an informed decision whether to accept the "no-look" fees, the Guidelines should clearly describe the tasks covered in those categories of services applicable for a fixed fee.